Syllabus.

# LYMAN BAIRD *et al.*

## *v.*

# FRANCIS JACKSON.

*Filed at Ottawa February 3, 1881—Rehearing denied March Term, 1881.*

1. CERTIFICATE—*of acknowledgment—of evidence to overcome the effect thereof.* Nothing short of clear and satisfactory proof, convincing beyond a reasonable doubt, can overcome the proof of the execution of a deed, afforded by the certificate of its acknowledgment. The testimony of the grantor alone is not sufficient.

2. EVIDENCE—*as to whether a deed was a forgery.* The acts and conduct of a party claiming a deed purporting to have been made by him is a forgery, before he had knowledge of said deed, can have no bearing on the question as to its genuineness, and can not be used to contradict his testimony that the deed is not his.

3. A deed purporting to have been executed by two persons—brother and sister—to another brother, and purporting to convey the interest of the grantors in premises of which the three were tenants in common, was claimed by both the grantors to be a forgery. It was considered that proof that the pretended deed was a forgery as to one of the grantors, would raise a strong presumption that it was also a forgery as to the other. The joint execution of the deed in the form it was made, was essential to its validity,—so proof of the forgery as to one, was of the *res gestæ*, and tended to shed light on the whole transaction.

4. CONTRIBUTION—*as between tenants in common, for improvements, etc.* It is a familiar and elementary rule, that where a tenant in common makes necessary repairs on the property, necessarily purchases an incumbrance or outstanding title, or improves the property with the express or implied assent of his co-tenants, these all inure to the benefit of all the tenants, and the law requires each to contribute to the expense in proportion to his interest in the property.

5. SAME—*as to forged deed purporting to convey the interest of one tenant in common to another—estoppel.* Where one tenant in common had given his express assent to the erection of buildings by his co-tenant upon premises held by them, even though there then existed what purported to be a conveyance from the tenant so assenting, to his co-tenant, of the interest of the former in the premises, of which he at the time had no knowledge, and which proved to be a forgery, it was *held,* the tenant so assenting to the making of the improvements, having held his co-tenant—the grantee in the forged deed —out to the world as the sole owner, by superintending the construction of

the buildings, and by other acts, will be estopped to claim that his interest in the property shall not be liable for its proportionate share of the cost of the improvements.

6. INCUMBRANCER—*improvements by owner.* All improvements placed on real estate by the owner while it is incumbered inures to the benefit of the holder of the incumbrance, and their value can not be claimed against the lien when they savor of the realty, but are subject to it.

7. SAME—*as to improvements by one tenant in common with the assent of his co-tenant.* So, where one tenant in common, by the express assent of his co-tenant, places valuable buildings on the common property, and thereby acquires a lien on his co-tenant's interest for a proportionate share of the cost of the improvement, it will be an accession to his interest, which will be subject to a deed of trust given by him on the property, and it will pass to the trustee to the same extent, in the same manner, and for the same reasons that the improvements became liable to the lien of the trust deed.

8. SAME—*where there is a lien upon two funds—when one of them must be first exhausted.* It is a rule of equity, that where a creditor has a lien upon two funds, in one of which the debtor has no interest, but has in the other, the debtor has a right to compel the creditor to exhaust the fund in which the former has no interest before resorting to that in which he has an interest. This is subject, however, to the limitation, that if other persons have a superior equity in the fund to which the debtor has no claim, then the rule has no application.

9. CHANCERY—*bill—whether multifarious.* As the statute contemplates that more than one tract of land, and even separate tracts in different counties, may be embraced in one bill for partition, a bill seeking partition of two distinct parcels of land held by different claimants, and to have forged deeds made in his name for the same set aside as clouds upon his title, is not multifarious, but the claimants of one lot of the land should only be taxed with one-half the costs in such a case.

10. Courts of chancery will always exercise a sound discretion in determining whether the subject matters of a bill are properly joined or not, and whether the parties, plaintiffs or defendants, are properly joined, each particular case, to some extent, depending upon its own facts.

APPEAL from the Circuit Court of Cook county.

Messrs. GOUDY & CHANDLER, for the appellants Baird, Chandler and Carrolls:

1.  The deed of March 25, 1868, from Francis to Obediah Jackson is not a forgery. The complainant's testimony lacks

corroboration, and is entitled to very little weight, and is insufficient, of itself, to produce the legal conclusion the deed was void. The law upon this question is settled in Illinois beyond any controversy. *Lickmon* v. *Harding,* 65 Ill. 505; *Canal and Dock Company* v. *Russell,* 68 id. 430; *Kerr* v. *Russell,* 69 id. 669; *Russell* v. *Baptist T. U.* 73 id. 341; *Haskins* v. *Forsythe,* 11 Leigh, 294; *Williams* v. *Hobson,* 6 Ohio St. 510; *Montgomery* v. *Hobson,* Meigs, 437.

The acts of the complainant in superintending the work on the buildings, and, after their completion, writing out leases for the property in Obediah's name, all tend to show the deed was not a forgery.

2. The complainant is not entitled to have this deed declared void, as against appellants, for these reasons:

*First.*—There is an equitable *estoppel* against him from his acts and conduct, holding his brother out as the sole owner of the property. *McNiel* v. *Tenth National Bank,* 46 N. Y. 329.

*Second*—He has been guilty of such *laches* in asserting his claim as to bar him of equitable relief. The deed in question had been upon the record for more than eight years before the bill was filed. If he was not chargeable with notice before, he had such notice or its equivalent in August, 1872, and he failed to file any bill until January, 1877, a period of four and a half years. During this interval, the incumbrance of $40,000 to the insurance company, and that for $51,000 to the Carrolls, were placed on the property. As against these incumbrances, the complainant has been guilty of such delay as to prevent a court of equity from granting him the relief asked. *Babcock* v. *Lisk,* 57 Ill. 329; *Higgins* v. *Ferguson,* 14 id. 270; *Russell* v. *Rawson,* 76 id. 171.

*Third*—Even if the complainant was entitled to an undivided one-third of the land, he was not entitled to an undivided one-third of the land as improved, without first having an account taken, and paying for his share of the improvements.

Mr. A. S. BRADLEY, for the appellants Butler and Ross:

The complainant's bill is multifarious, as oppressing the defendants by the expense and delay of litigating issues of controverted titles to distinct properties. Even a simple partition suit ought not to embrace parcels not contiguous, unless all the co-tenants are interested in all the parcels. Freeman on Co-tenancy, sec. 437.

Under this head, see *Prentiss' case,* 7 Ohio, 468; *Hennerville* v. *Taylor,* 3 Gray, 112; *Kitchen* v. *Sheets,* 1 Ind. 137; *Mavor* v. *Armant,* 14 La. Ann. 177; *Brownell* v. *Bradley,* 16 Vt. 105; *Burnett* v. *Lester,* 53 Ill. 326; *McConnell* v. *Kibbe,* 43 id. 12; *Gaines* v. *Chew,* 2 How. 616.

There is no sufficient proof that complainant did not execute the deed of his one-third interest to Dickhant. *Kerr* v. *Russell,* 69 Ill. 666; *Greene* v. *Godfrey,* 44 Me. 25; *Harkins* v. *Forsythe,* 11 Leigh, 294.

Complainant is equitably estopped to contest Butler's title as mortgagee of the whole West Twelfth street property. *Smith* v. *Newton,* 38 Ill. 235; *Noble* v. *Christian,* 88 id. 199; *Donaldson* v. *Holmes,* 23 id. 85; *Brooks* v. *Record,* 47 id. 30; *Kane Co.* v. *Herrington,* 50 id. 22; *Kinnear* v. *Mackey,* 85 id. 96; *Cochran* v. *Harrow,* 22 id, 345; *Hefner* v. *Vandolah,* 62 id. 483; *Livings* v. *Wiler,* 32 id. 387; *Lewis* v. *Carstairs,* 5 W. & S. 209; *Bowen* v. *Bowen,* 30 N. Y. 541; *Horn* v. *Cole,* 51 N. H. 287; *Goeing* v. *Urig,* 18 Ill. 238; *Chandler* v. *White,* 84 id. 436.

Messrs. BEAM & COOK, for the appellee:

The complainant has never conveyed his one-third interest in the property in controversy, or any part thereof, and the pretended conveyances, purporting to have been made by him, are forgeries.

The evidence of Mrs. Bradford, that her signature to the joint deed was forged, is evidence that the signature of the complainant was forged. *Steele* v. *People,* 45 Ill. 152; *Cross* v. *People,* 47 id. 152.

The complainant had no notice or knowledge, actual or constructive, of the making and recording of the forged deeds, and subsequent mortgages put on record, conveying his third interest in the property.

To constitute an *estoppel in pais*, all of the following elements must be present:

1.    There must have been a representation concerning material facts.

2.    The representations must have been made with knowledge of the facts.

3.    The party to whom the representation was made must have been ignorant of the truth of the matter.

4.    It must have been made with the intention it should be acted upon.

5.    It must have been acted upon.    Bigelow on Estoppel, chap. 18, pp. 431, 437; *People* v. *Brown*, 67 Ill. 438; *Calhoun* v. *Richardson*, 30 Conn. 210; *Thrall* v. *Lathrop*, 30 Vt. 307; *Danforth* v. *Adams*, 29 Conn. 107; *Martin* v. *Zellarbach*, 38 Cal. 300; *Clark* v. *Cooledge*, 8 Kan. 189; *Davidson* v. *Young*, 38 Ill. 145.

It is also held that to create an estoppel by the acts, representations or conduct of a party, they must have been made or done with the *intention* of influencing the conduct of the party claiming the estoppel.    See *Smith* v. *Newton*, 38 Ill. 230; *Davidson* v. *Young*, 38 id. 145; *Mills* v. *Graves*, id. 455; *People* v. *Brown*, 67 id. 435; *Dorlarque* v. *Cress*, 71 id. 380; *Chandler et al.* v. *White*, 84 id. 435; *Kinnear* v. *Mackey*, 85 id. 96.

The burden of proof was upon the defendants to prove affirmatively all the elements necessary to an equitable estoppel.    *Hill* v. *Epley*, 31 Pa. St. 331; *Morris* v. *Moore*, 11 Humph. 433.    And the evidence of the facts must be clear and satisfactory.    *Preble* v. *Conger*, 66 Ill. 370.

The complainant is not equitably estopped to deny the validity of the forged deed of March 25, 1868, or the forged release and quitclaim deed of May, 1876.    *Chandler* v. *White*

*et al.* 84 Ill. 435; *Davidson* v. *Young,* 38 id. 145; *Flower et al.* v. *Elwood,* 66 id. 477; *Meloy* v. *Collins et al.* 41 Cal. 663; *Living* v. *Wiler,* 32 Ill. 387; *Whittaker* v. *Miller,* 83 id. 381.

Francis Jackson is not estopped as against the $40,000 trust deed executed by Obediah to Lyman Baird, trustee, recorded January 27, 1875.

The rule that the change of conduct must be induced by the acts or conduct of the party estopped, absolutely precludes acts done or declarations made, after the change of conduct, from creating an estoppel. A representation or admission made after the change of position, will not work an estoppel. *Davidson* v. *Young,* 38 Ill. 145; *Hener* v. *Vandolah,* 57 id. 20; *Garlinghouse* v. *Whitwell,* 51 Barb. 208.

There is nothing in the objection that the bill is multifarious. It was filed under section 39, page 753, Revised Statutes, 1874. *Henrichson* v. *Hodgen,* 67 Ill. 179.

It has always been the practice in chancery, in suits for partition of an estate, whether in one or more parcels of land, to join all parties interested in the whole or any part of the lands, even though the derivative interest of one, as an alienee of a tenant in common, is confined to one distinct parcel, and the interest of another as such alienee is confined to another distinct parcel. 1 Story's Eq. Jur. sec. 656 c, 657; *Storey* v. *Johnson,* 1 Younge & Collyer, 538; 2 id. 586.

So, where one tenant in common has been in the exclusive perception of the rents and profits, on a bill for partition and account the latter will also be decreed. 1 Story's Eq. Jur. sec. 655, and numerous cases cited. *Mahoney* v. *Mahoney,* 65 Ill. 406.

All persons interested in the property should be made parties when the proceeding is in chancery. *Kester* v. *Stark,* 19 Ill. 328; 2 Danl. Ch. Pr. 1156; 1 Danl. Ch. Pr. 208, 209, 263; 1 Wash. R. Prop. p. 585; Danl. Ch. Pr. 336, 341; *Nichols* v. *Mitchell,* 70 Ill. 258.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Obediah Jackson, Sr., died in the year 1865, leaving Obediah, Jr., Francis and Alice Mary, his children, and heirs at law. At the time of his death, he owned a large amount of real estate and a considerable amount of personal property. His son Obediah administered on his estate, but never settled or distributed the personalty. In October, 1871, the greater portion of the buildings on the property in Chicago was consumed by fire. Of the property thus injured were lots 17, 18, 19 and 20, in Sheldon & Rumsey's subdivision of 205 feet on the south side of block 17, in Bushnell's addition to Chicago, and situated on Dearborn street.

Complainant filed his bill to have his third of this property, and also of 40 feet of lot 2, in block 67, canal trustees' subdivision, situated on West Twelfth street, partitioned and allotted to him in severalty. Also to have certain deeds, purporting to have been made by him to convey his third of this property, set aside as forgeries, and as clouds on his title. The deeds claimed to be forgeries were, one of them, to Obediah, Jr., for the Dearborn street property, and bore date the 25th of March, 1868. The other was to Dickhant, and was for the Twelfth street property, and bore date on the 25th day of May, 1876. They both purported to have been acknowledged, and were recorded. The records having been destroyed by the fire which consumed the buildings on the Dearborn street property, and the deed to that property not being produced on the trial, and the parties being unable to procure a copy, they were compelled to rely on an abstract of title. It does not give the name of the officer before whom the acknowledgment was taken. This deed, according to the abstract, purported to have been executed by complainant and his sister, Alice Mary, who subsequently married N. G. Bradford, Jr. She having settled with Obediah for her interest in her father's estate, and executed a release to

him, her interests are in no manner involved in this litigation.

Obediah Jackson and wife, on the 21st of November, 1874, executed a trust deed on the Dearborn street property, to Lyman Baird, as trustee, to secure the payment of $40,000 to the Phœnix Life Insurance Company, due in two years. Again, on the 13th day of November, 1876, Obediah Jackson executed a trust deed for the same property, to George Chandler, as trustee, to secure about $51,000 to the Misses Carrolls. The bill alleges that these deeds of trust are clouds on complainant's title to the lots, and prays to have them removed as such. The first of these deeds of trust was executed over two years after Mrs. Bradford had released all of her title and interest in the property to Obediah, and he then unquestionably held title to two-thirds of this property. During the pendency of this litigation, the Carrolls purchased the indebtedness from the insurance company, and thus became the owners of both claims and the deeds of trust.

The first question presenting itself for solution, is, whether the deed, purporting to have been executed by complainant and his sister to Obediah, is a forgery. On the trial, complainant swore most positively that he did not execute this deed, and never authorized any person to do so for him. His sister was equally as positive that she did not execute it. And she testifies she was not aware of its existence until December, 1876, or January, 1877. But she learned in 1872 that Obediah had mortgaged the lots in his own name, as the owner. Had the deed been genuine, she would almost certainly have known the fact. She, however, knows it was a forgery as to her. She, of course, was unable to swear that Francis did not execute it, but was able to swear she did not, and, as it was a forgery as to her, it raises a strong presumption that it was as to him. Her execution of the deed, if genuine, would have been a part of the transaction, inseparable from it, and would have been indispensable to its validity in the form it was made. And, being so inseparably connected, we

regard that the evidence that it was·a forgery as to her, tends strongly to prove it was a forgery as to him. This was a fact connected with the execution of the deed, and was of the *res gestœ*, and it tends to shed light on the transaction.

The question of the forgery, as to him, does not depend alone on his testimony, as is urged. If it did, numerous cases in this court would determine it wholly insufficient to overcome the proof of its execution afforded by the certificate of the officer that it was acknowledged before him. It is settled by those cases that nothing short of clear and satisfactory proof, convincing beyond a reasonable doubt, can overcome the proof of the certificate. His evidence is strongly supported by that of his sister; and she is entirely disinterested, and hence her evidence is free from suspicion. We think, all the evidence considered, that it proves this deed was a forgery.

But the question still arises that, conceding the deed to be a forgery, whether complainant did not so act as to bind himself, or rather his third of the property for its *pro rata* share of the expense of the improvements. He admits that, as early as in 1872, he and his brother, Obediah, after consulting as to the propriety of rebuilding on the lots they owned in common, the buildings on which had been destroyed by fire, determined to rebuild thereon. And, he says it was understood that his brother, in doing so, would use real estate of his own, and the funds of complainant coming from their father's estate. It also appears that afterward, the loan from the insurance company of the forty thousand dollars was procured, and used in erecting the buildings on these lots, and in freeing them, as we understand it, from a prior incumbrance of about thirteen thousand dollars.

It appears that complainant had lived with Obediah, and had a desk in his law office, and was on the most intimate terms with his brother, and so continued whilst these buildings were being erected, and until some time in the year 1876. When the buildings were being erected, he largely

superintended their construction.   He saw Mr. Baird there, from time to time, examining the work as it progressed, to make advances on the loan from the insurance company as the work advanced towards completion.   Complainant, from this money, which was from time to time placed to Obediah's credit at the bank, on checks drawn by Obediah, paid the contractors.   And, after the buildings were completed, he drew leases in Obediah's name, which were signed by him, to tenants who occupied the buildings.   He collected rents, gave receipts for rents in Obediah's name, and placed the money to his credit in the bank.   This continued until in 1876, and never, so far as the record shows, prior to that time having, to Baird or any one else, asserted any claim whatever to the property.   He thus held his brother out to the world, whilst the buildings were in progress, and until in 1876, as the sole owner of the property.   We think he so acted that he is estopped to claim that his interest in the property should not be held liable for one-third of the cost of the improvements.   He has acquired the enhanced value the improvements have added to it.   And every principle of justice requires that he should account to those whose money has enhanced the value of his property.   If he was unwilling to pay for it he should have notified Baird that he would not, and had Baird still advanced money for the purpose, the fault would have been his, and not complainant's.

There is another view of the case.   It is a familiar and elementary rule, that where a tenant in common makes necessary repairs on the property, necessarily purchases an incumbrance, or outstanding title, or improves the property with the express or implied assent of his co-tenants, these all inure to the benefit of all of the co-tenants, and the law requires each to contribute to the expense, in proportion to their several interests.   Here, appellee authorized Obediah to make the improvements.   Not only so, but he was present frequently, superintending the work, and paid the contractors for Obediah with means drawn from his bank account.   This,

then, would seem to render his interest liable to account to Obediah for its *pro rata* share of the cost of the improvements.

The rule is familiar, that all improvements placed on real estate by the owner when it is incumbered, inures to the security or benefit of the holder of the incumbrance. They can not be separated, when they savor of the realty, from the land, nor can their value be claimed as against the lien, but are held to be subject to it. Here, Obediah placed buildings on the mortgaged property, and there can be no question that, as to his two-thirds, the improvements became liable to the debt to the same extent as did his two-thirds of the land itself. In placing these buildings on the lots, he acquired a lien on the other one-third for a proportionate share of the cost of the improvements. And this lien in his favor was an accession to the property, or his interest in it, as fully as were the improvements. And this lien inured to the benefit of the mortgagee, to the same extent, in the same manner, and for the same reasons that the improvements became liable to the lien of the deed of trust.

But it is claimed that Obediah agreed to pay for complainant's portion with the means in his hands, as administrator of their father's estate, to which complainant was entitled. Concede this to be true, does it appear that Obediah performed the agreement, or that he so paid a single dollar? We think not. The tendency of the evidence is strongly in favor of the inference that it was the money derived from the loan from the Insurance Company, and Obediah's land, that paid for the materials and the workmen, and not the money coming to complainant from his father's estate. All of the evidence on the question shows that the money thus used was Obediah's, drawn from the bank on his checks. And complainant says he does not know whence Obediah procured it. We think it manifest that not only the real estate, but the money paid for these improvements, was Obediah's.

Complainant had never had any settlement with Obediah in reference to his interest in his father's estate. What was coming to him from that source had not been ascertained by a settlement in the Probate Court, or with Obediah. The amount was unknown, and never had been adjusted or separated from Obediah's means. He was liable to account to Francis for whatever was coming to him. So we regard it as clear that no portion of complainant's money was paid for these improvements, but all by Obediah with his own means.

The questions affecting the Twelfth street property depend on evidence different in character from that relating to the Dearborn street property. It appears that on the 3d day of October, 1872, having recently, before that time, procured the release for this and other property from his sister, Obediah conveyed this property, as an entirety, to one Dickhant. The consideration was about $14,000. A part was paid at the time of the purchase, and notes taken for the balance. The purchaser, to secure the notes, deeded the property in trust to one Field. Afterwards these notes and the deed of trust were cancelled, and new notes and a deed of trust were given by Dickhant to complainant.

At the time of the conveyance Obediah only held two-thirds of the property, the other third belonging to complainant. Obediah warranted the title to Dickhant, and the notes for the balance of the purchase money were payable to Obediah. In 1875 the City Savings Bank, of which Obediah was vice-president and attorney, purchased these securities. Dickhant, having made default in the payment of interest, and Obediah being anxious to raise money on this indebtedness, induced Dickhant to renew them by giving new notes for the amount then due, and a new deed of trust to Ross. In renewal, one note was given for $6000 and one for $2000. The old notes and deed of trust were cancelled when the new ones were given. This renewal was made on the 3d of July, 1876, and defendant Butler purchased the $6000 note through brokers of Portland, Maine. Before he purchased, the City

Savings Bank guaranteed the payment of the notes. On the 27th of the previous May, the deed, dated on the 25th, purporting to have been executed by complainant to Dickhant, for this property, was recorded. Complainant claims that this deed, and the deed of release from him to Dickhant cancelling the trust deed from the latter to him, are forgeries, and this is one of the questions to be determined in this case.

Complainant, in testifying on the hearing, swore positively that he never executed the deed to Dickhant, or authorized its execution. This evidence is strongly corroborated by Cole, the notary before whom the deed purports to have been acknowledged. He testifies that he never took an acknowledgment of such an instrument from complainant. Had the period not been so short before the filing of the bill, this evidence would have been regarded as of but little weight. Such officers are in the habit, in many instances, of taking large numbers of such acknowledgments, and, as we presume, feel no particular interest in such transactions. It is not, therefore, reasonable to suppose they ordinarily charge their memory with such occurrences, and they soon pass from their memory. But, in this case, the date of the certificate was but a few months prior to the alleged discovery of the forgery, and no ordinary memory could have forgotten it, had it in fact occurred. As he and complainant had been constantly associated in the same office for years, he would surely have remembered it at so short a period after its occurrence. We are, therefore, of opinion that the evidence shows that this deed was a forgery.

It is, however, insisted, that the conduct of complainant contradicts his evidence; that he ceased to collect the rents of this property after Obediah made the sale, and gave it no further attention until Obediah took the rents to meet the interest on Dickhant's notes; that his relations and intimacy with his brother and his business was such that he must have known of the situation of the title to this property. But it must be borne in mind, that all such acts occurred before this

forged deed was placed on record, and they can not be held to have any bearing on this subsequent deed, or to prove it is genuine. They can have no such effect.

It is claimed, however, that Hammond, the president of the City Savings Bank, took the notes and deed of trust to complainant in the summer of 1865, at his brother's office, to procure his indorsement on some of them, when, after examining them, he said it was right, but desired to see Obediah before indorsing them; that Obediah, a day or two after, took the notes to his office, and returned with them indorsed by complainant. He unqualifiedly denies that such an interview, for that purpose, ever occurred, and five of the seven notes were produced on the trial, and they were not indorsed by him. Thus it appears that Hammond was mistaken, and referred to some other transaction. But, even if he was correct, does it prove that complainant should be precluded from asserting his claim to this property, free from the lien of this debt? The notes and deed of trust to him, at most, showed that Dickhant had given a deed of trust on the whole of the property, when he owned but two-thirds. There is no pretense that the forged deed was then on record, or until nearly a year afterwards. Even if he did say the instruments were right, after examining them, that would not transfer his third or estop him from asserting his title to it. The records were open to the bank, and, had it examined them, it would have found a third of the property belonged to him. That was notice to the bank of the state of the title. Had he said, at the time specified by Hammond that he had conveyed his third to Dickhant, then a very different question would have been presented. But, be this as it may, we regard the evidence as being insufficient to prove the statement to which Hammond swears. All the evidence considered, we are of opinion that complainant has shown the deed to be a forgery, and Butler and Ross have failed to show that complainant is estopped from denying that the deed of trust is a lien on his third of the property.

It is also urged, that the bill, as amended by striking out the prayer for an account of the estate of the father in the hands of Obediah, is still multifarious, and the demurrer to it should have been sustained; that by the bill, complainant insists that he is the owner of one-third of both the Dearborn street and Twelfth street property—his tenants in common in the one are different in the other; that no one of the defendants claims an interest in both of these classes of property, and for that reason the bill is multifarious. It may be said, that no rule of equity pleading is less definitely settled, than that of multifariousness,—and, from its very nature, it must be so, as another rule requires all persons having an interest in the subject matter of the litigation, to be made parties. A person may frequently be made a defendant who has no interest in common with any other defendant. As to all but his particular interest, that of the others may be entirely distinct and separate, and yet be embraced in the bill, and he made a party. Here, complainant claimed a one-third interest in all of the property named in the bill, which seeks to have that interest set off and partitioned to him. The statute contemplates that more than one tract, and even separate tracts in different counties, may be embraced in one bill. See sec. 21, chap. 107, Rev. Stat. 1874. The bill is, therefore, not multifarious, unless it is rendered so by an improper joinder of defendants.

Story, in his work on Equity Pleadings, after reviewing the various cases on the subject, in section 539, says: "It seems to be, that there is not any positive, inflexible rule as to what will be fatal on demurrer. That courts have always exercised a sound discretion in determining whether the subject matters of the suit are properly joined, or not; and whether the parties, plaintiffs or defendants, are properly joined; that each particular case must, to some extent, depend on its own facts, having reference to former decisions, being governed by analogies." It seems to us that there was no error in disallowing the demurrer. See *Ryan* v. *Trustees of Shaw-*

*neetown,* 14 Ill. 20; *Gage* v. *Chapman,* 56 id. 311, and *Finch* v. *Martin,* 19 id. 105. But Ross and Butler should not be taxed with more than half of the costs in this or the lower court.

The decree, as to the Twelfth street property, is affirmed, but it is reversed as to the Dearborn street property, and the cause is remanded that further proceedings may be had in reference to it, in conformity with this opinion.

*Decree reversed in part and affirmed in part.*

Subsequently, upon an application for a rehearing, the following additional opinion was filed:

PER CURIAM: It is urged as one of the grounds for a rehearing, that the deed of trust on which the money was loaned to Obediah Jackson, Jr., contains other lots and real estate in which appellee claims no interest, which should first be exhausted, and applied in satisfaction of the deed of trust, before resorting to appellee's third of the Dearborn street lots.

The opinion heretofore filed was not intended to nor does it exclude this view of the case. When the court below shall come to re-try the case, this question can be presented and considered, and if that court shall find, on the evidence presented, that it is equitable and just to apply the property on which appellee has no claim, in satisfaction of the debt, before subjecting appellee's third of the Dearborn street lots, the court will so decree.

If the equities of other parties do not forbid, appellant should be required to exhaust his remedy against the property to which appellee has no claim, before resorting to his Dearborn street property.

It is a rule of equity, that a creditor, having a lien on two funds, in one of which the debtor has no interest, but has in the other, the debtor has a right to compel the creditor to exhaust the lien on the fund in which he has no interest

before resorting to the fund in which he has an interest. This rule is, of course, subject to the limitation, that if other persons have a superior equity in the fund to which the debtor has no claim, then the rule can have no application.

The petition for a 'rehearing, having been carefully considered, is denied.

*Rehearing denied.*