ISABELLA FLOWER *et al.*

*v.*

JAMES G. ELWOOD *et al.*

1. PAYMENT—*what will amount to.* As a general rule, only payment, or something done and accepted as payment or satisfaction, can be held to discharge an obligation. When anything else than payment is accepted as satisfaction, it must appear that such was the intention of the parties.

2. SAME—*effect of surrender of note as evidence of.* Although the surrender of promissory notes by the holder to the maker is *prima facie* evidence of their payment, still such presumption may be rebutted by other proof.

3. MORTGAGE—*special release construed.* Where a mortgagee, in pursuance of a stipulation in the mortgage to that effect, gave a release in favor of the United States to enable the mortgagor to commence the distillery business, which stipulated "that the lien of the United States for taxes and penalties should have priority of said above mentioned mortgage, and in case of the forfeiture of the distillery premises, or any part thereof, the title shall vest in the United States, discharged from said mortgage, and for that purpose the said party of the first part does hereby remise, release," etc., which release was duly recorded: *Held*, as against a party claiming title under a junior incumbrance, that the instrument did not operate as a general release of the premises from the prior mortgage, but that its only effect was to give the government a priority of lien.        °

4. SAME—*whether satisfied by taking new notes with personal security.* Where a mortgage, given upon distillery property, provided for the release of the same in favor of the United States in a certain event, upon the mortgagee being indemnified by certain personal security, and before the contingency arose, the latter assigned the first of the notes named in the mortgage to A, and the two next of the series to B, and indorsed a part of the mortgage to B, retaining the fourth and last note, and afterwards, upon the mortgagor giving new notes with personal security, the mortgagee and B surrendered the original notes, and the mortgagee executed the release as to the United States so as to give the latter a first lien, and the government agent who procured this release, without authority, surrendered the mortgage to one of the makers of the notes: *Held*, as against a purchaser under a junior incumbrance, that whether the exchange of notes operated to discharge the mortgage, depended upon the intention of the parties and the circumstances attending the transaction, and the proofs showing there was no such intention, it was held to be no discharge.        .

5. The fact that a new note is taken with personal security, will not operate as a satisfaction of a mortgage unless so intended. As a general rule, a mere change in the form of the debt does not satisfy a mortgage given to secure it. In equity, mere form is disregarded, and the substance only considered; consequently, a mere change in the form of the evidence of the debt, such as a renewal of the note, its reduction to a judgment, or other change, not intended to operate as a payment, will not affect the mortgage lien.

6. SAME—*lien—how destroyed.* Where a mortgage is given, the lien of the debt attaches to the mortgaged property, and the lien, as between the

parties, can only be destroyed by the payment or discharge of the debt, or by a release of the mortgage.

7. Where a portion of the notes secured by a mortgage, were assigned to a third person, and the mortgagor gave new notes, with personal security, to the several legal holders of the original notes, there being no intention, in fact, to release the mortgage security: *Held*, that the lien was not thereby lost, even as to subsequent incumbrancers and purchasers under a subsequent incumbrance.

8. ESTOPPEL—*what facts necessary to create an equitable estoppel.* In order to conclude a party by an equitable estoppel, or an estoppel *in pais*, there must be a fraudulent purpose of the party against whom it is applied, or his acts must produce a fraudulent result; and there must be a change of conduct, induced by the acts of the party sought to be estopped, to the injury of another. If the element of fraud or injury is wanting, there is no estoppel.

9. SAME—*rule applied to facts of a case.* Where the mortgagor of distillery property, when about to commence business, through a government agent, procured a writing from the mortgagee, giving the United States a prior lien, which was duly recorded, and the agent, without the authority or consent of the mortgagee, or of an assignee of a portion of the notes so secured, delivered the mortgage to one of the makers of the notes: *Held*, that these facts did not operate to estop the mortgagee, and those claiming under him, from asserting the mortgage as against a subsequent incumbrancer, and purchaser under the subsequent incumbrance, as the parties against whom it was sought to be applied were guilty of no fraudulent representations or acts that induced those invoking the application of the rule to act one way or the other.

10. POWER—*sale under delegation of power.* Where a power of sale is conferred by a deed of trust, or mortgage, it must be strictly pursued, the presumption being that the delegation of the power was induced by trust and confidence in the trustee authorized to make the sale. Such power, unless authorized by the instrument itself, can not be delegated to another.

11. Where a mortgage gave the mortgagee, his representatives or attorney, power to sell the mortgaged premises upon default of payment, and the sale was made by a person claiming to represent the assignee of one of the notes, as agent, with discretionary power: *Held*, on bill in equity, that the sale was void, because the mortgage failed to confer power of sale on the assignee, or others acting under him; and, *secondly*, because, even had it given such power, the sale was made by an agent of the assignee of the note, which the law does not authorize.

12. MORTGAGE—*sale under power, defeated by tender.* Where a mortgage was given to secure the payment of four notes, and the mortgagee assigned the note first falling due, to A, and the two next to B, retaining

the other, and the mortgagor substituted other notes with personal security in lieu of the last three, .the first two being made payable to B, and the last to the mortgagee, and C purchased one of the notes given to B, and A transferred his note, being the first of the series, to D, and he to E, and he to F, who sold it to G, who had acquired the equity of redemption to the mortgaged premises, and C tendered the amount due on the first note, which was refused.: *Held*, that such tender was sufficient to prevent a sale of the premises under a power contained in the mortgage, and ground for setting any such sale aside.

13. TENDER—*who may make, to prevent sale under power in a mortgage.* Where a tender of payment of a note, secured by mortgage, was made before sale under a power therein contained, by a person holding another one of the notes secured in the same mortgage: *Held*, that the latter had such an interest in the mortgaged premises as authorized him to make the tender, and that it mattered not whether the note for which the property. sold, was a prior, equal or subsequent lien, as in either event he had a right to pay the note and prevent the sale.

14. SAME—*sufficiency of, when no objection is made.* Where a party, holding one of a series of notes secured by a mortgage containing a power of sale, made a tender of the amount due upon a note for which the premises were sold, before such sale, but the tender included nothing to the person making the sale as his fee, or for his time in going to the place of sale, but was refused on other grounds, and there being no objection made on this account: *Held,* that the tender was sufficient to prevent the sale.

15. NOTICE *to agent when notice to principal.* Where a purchase was made by a married woman through her husband as her agent, of mortgaged premises, under a power of sale, and the agent was present and saw a tender made to the persons selling, before the sale, of ·the amount due on the note for which the sale was made, and the same tender was made to the agent after the sale, but before the deed was made: *Held*, that this was sufficient to charge the purchaser, through her agent, with notice of the tender.

16. MORTGAGE—*priority of lien in series of notes.* Where the note first falling due in a series, secured by a mortgage, was transferred to A, and the next two in the series to B, and the last retained: *Held*, that the first note was a first and superior lien on the mortgaged premises, and that the holder of it was entitled to have it satisfied out of the proceeds of a sale under a power in the mortgage before the other notes were entitled to participate in the same.

APPEAL from the Circuit Court of Will county ; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. BRECKENRIDGE & GARNSEY, for the appellants.

Mr. G. D. A. PARKS, and Messrs. HILL & DIBELL, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court :

·In the month of July, 1869, Alexander F. Askin purchased from Mary Adams a part of block 39, canal trustees' subdivision of the west half of section 15, township 35 north, range 9 east, in Joliet, in this State, for distillery purposes. The price of the property was $3013.31, for which he gave four notes for different sums, falling due at different dates, all bearing interest, and payable to the vendor; and at the same time executed a mortgage on the premises to secure the payment of the notes, containing a power of sale. It also contained this provision :

"It is also stipulated and agreed by and between the par-. ties hereto, that, when the distillery is ready to start to run, that then this mortgage is to be released by the party of the second part to the government of the United States, upon the party of the first part giving to the party of the second part an indemnifying bond signed by J. G. Elwood, or other satisfactory security."

These notes were also signed by William L. Price, he being a partner of Askin. Soon after the execution of the notes, Mrs. Adams, by her husband, assigned the note first falling due, in six months, and for $513.31, to Ludington & Co., of Chicago, and assigned the note falling due in twelve months, and for $500, and the note for $1000, and falling due in eighteen months, to Thomas S. Burger, and delivered to him the original mortgage with an assignment of $1500 of the notes and mortgage indorsed thereon, dated July 3d, 1869; but the fourth note, for $1000, and due in twenty-four months, was retained. The mortgage covered two acres of ground, and Askin purchased another acre adjoining it.

In October, 1869, Askin and his partners, being ready to commence distilling spirits, tendered Mrs. Adams a bond in pursuance of the terms of the mortgage, but she and Burger refused to receive it, and to give their consent to the government that the property might be used as a distillery. Thereupon, Askin & Co. executed three new notes, corresponding with the last three, except the first two were payable to Burger, and procured them to be indorsed—those to Burger by Elwood and Bush, and that to Mrs. Adams by Elwood alone, and they were delivered respectively to Burger and Mrs. Adams, and the three old notes were surrendered; and some days afterwards, the government agent, who drew the consent that the property might be used as a distillery, delivered the mortgage to Pierce.

After the exchange of notes had taken place, Mrs. Adams executed the consent, which, as well as the mortgage, was recorded. Askin & Co. becoming embarrassed, they applied to one Gore, who advanced them money and took a trust deed on the three acres of ground to secure its payment. This trust deed was recorded. Askin, to secure the bondsmen of the company, gave them a mortgage on the whole property, which was recorded. There were also several mechanic's liens on the property which were afterwards enforced.

Askin & Co. failed, and Gore sold under his trust deed and became the purchaser, and subsequently sold the premises to Mrs. Flower, appellant. In the course of the negotiations Gore purchased the note assigned to Ludington, and assigned it to William H. Flower, who transferred it to Kinney, who sold to Mrs. Flower.

Elwood, subsequently, and after it fell due, purchased of Burger one of the new notes, which was indorsed to him, it being the $500 note, and he, with Burger and Adams, filed this bill to foreclose the mortgage and to set aside Kinney's sale and deed. On a hearing, the court below decreed that the mortgage was subsisting, and a lien to secure the new notes; decreed that Askin pay the amount due thereon; set

444        FLOWER *et al. v.* ELWOOD *et al.*        [Sept. T.

Opinion of the Court.

aside the sale, and decreed the sale of the premises; and to reverse the decree, Mrs. Flower appeals to this court.

Did the execution of the new notes and the surrender of those for which they were given, operate to release or discharge the mortgage to Mrs. Adams? As a general rule, payment, or something done and accepted as payment or satisfaction, can only be held to discharge an obligation. Where anything else than payment is accepted as satisfaction, it must appear that such was the intention of the parties. *Ralston* v. *Wood*, 15 Ill. 171. And although the surrender of the notes by the mortgagee, to the maker, is *prima facie* evidence of their payment, still such presumption may be rebutted. So the cancellation of a mortgage of record is *prima facie* a satisfaction and discharge, but it may be proved to have been made by accident, mistake or fraud, and the mortgage will remain in force against the mortgagor, if not against innocent purchasers and incumbrancers.

It is urged that the surrender of the old notes and taking the new ones, and the mortgage being delivered to the makers, waived the lien of the mortgaged premises, and that Gore thereby, under his purchase, acquired title to the land free from incumbrance or lien of the mortgage. Upon turning to the record, we find that the release given by Mrs. Adams to the government only waives the lien to the government, and retains it as to all others. It stipulates "that the lien of the United States for taxes and penalties shall have priority of said above mentioned mortgage, and in case of the forfeiture of the distillery premises, or any part thereof, the title shall vest in the United States, discharged from said mortgage, and for that purpose the said party of the first part does hereby remise, release," etc. This release to the government was duly recorded in the proper office and became notice to all persons.

This all occurred before Gore received his mortgage, and he is chargeable with notice of all that release contained. It

does not purport to be a release of the mortgage to any person, but simply giving the government priority of lien to the mortgage. If Gore saw the record of this instrument, he could not have been misled to believe that the mortgage was discharged; he, then, loaned the money and took his junior mortgage, with notice, and subject to the lien of the mortgage to Mrs. Adams. Nor did his purchase under his mortgage relieve the premises from the prior lien; and his sale to Mrs. Flower did not change the relation of the parties to this property.

It is urged that Gore and Mrs. Flower were protected by the fact that the old notes were surrendered and new ones taken, even if Mrs. Adams did not release her mortgage so as to give Gore's mortgage priority; that, finding the notes and mortgage in the hands of Askin, he had the right to suppose that the debt was paid and the mortgage was discharged, and he should therefore be protected.

Whether this exchange of notes operated to discharge the mortgage, as between the parties, at least, depended upon their intention; and when we turn to the evidence, the preponderance is overwhelming that it was not intended as a satisfaction, but, on the contrary, the holders of the notes intended to rely upon it and hold it as a valid lien against every one except the general government. The circumstances attending the transaction, together with what the parties said at the time, unmistakably show that the purpose was not to discharge the mortgage, as this, Mrs. Adams, it seems, most positively refused to do, on the ground that other holders of the notes had an interest in the mortgage; and the purpose, and sole purpose, of those in arranging the matter was, to so shape the securities as to give the government a first lien on the premises for any liability that Askin and his partners might incur by a violation of the revenue laws in distilling spirits. This being the object, and the testimony largely preponderating that the holders of the notes did not intend to release or discharge their lien for the payment of the notes,

we can not presume that a discharge occurred by taking the new notes. Any *prima facie* evidence of satisfaction arising from the transaction, is fully overcome by other evidence. Nor does the fact that a new note is taken, with personal secu-rity, operate as a satisfaction of a mortgage. Unless so intended, it can have no such effect.

But it is urged that two of the notes were made payable to a different person from the payee in the original. This is true, but Burger, to whom they were payable, held the original notes by assignment, and the legal title was in him, and by assignment he had become and was the payee, and had the right to sue upon the notes or to foreclose the mortgage. This being so, how can it be said that there was any change of persons to whom the money was payable? As to all three of the new notes, they were made payable to the persons to whom the old notes were payable, and the same persons held the mortgage lien before and after the substitution of the new notes. The relation of the parties to the debt was in nowise changed by the transaction.

As a general rule, the mere change in the form of the debt does not satisfy a mortgage given to secure it, unless it is intended to so operate. The lien of the debt attaches to the mortgaged property, and the lien can, as between the parties, only be destroyed by the payment or discharge of the debt, or by a release of the mortgage. Mere change of the form of the evidence of the debt in nowise affects the lien. A renewal of the note, its reduction to a judgment, or other change, not intended to operate as a discharge of the lien, still leaves it, as between the parties, in full vigor. This is a rule in equity that is sanctioned by many adjudged cases. In that forum, mere form is disregarded, and the substance only is considered. The cases of *Hamilton* v. *Quimby,* 46 Ill. 91, *Wayman* v. *Cochrane,* 35 Ill. 155, *Elliott* v. *Blair,* 47 Ill. 343, and *Rogers* v. *Trustees of Schools,* 46 Ill. 428, illustrate the rule.

The fact that the mortgage is found in the hands of the mortgagors, has no significance in this case, as it clearly appears that Godard delivered it to Pierce without authority and against the intention of the holders of the notes. Such a delivery of the mortgage fails to prove that a satisfaction was intended, any more than it would had Askin taken it from the custody of the mortgagees without their knowledge or consent.

The mortgage and release were duly recorded, and, of course, operated as notice to the world of the claims of Mrs. Adams and Burger. Had appellants or others felt any interest in learning whether the mortgage was paid, they could have readily learned by calling on Mrs. Adams. They, no doubt, saw the mortgage and release of record, and unsatisfied, and should have made inquiry and learned the facts

It is urged that appellees are estopped, by giving up the mortgage to the makers, from now claiming any interest under it as against appellants. We have seen that the parties did not surrender the instrument to the makers, but Godard did so without authority. To conclude a party by an equitable estoppel, or an estoppel *in pais,* there must be a fraudulent purpose of the party against whom it is applied, or his acts must produce a fraudulent result; and there must be a change of conduct induced by the acts of the party estopped, to the injury of another, in order to prevent him from showing the truth. If the element of fraud or injury is wanting, there is no estoppel. *Davidson* v. *Young,* 38 Ill. 145; *Smith* v. *Newton,* ib. 230. In this case there were no fraudulent representations or acts on the part of Mrs. Adams or Burger that induced appellants to act one way or another. No injury resulted to them from anything they did or said, and the elements of estoppel are therefore wanting.

It appears that Elwood had become the owner of the $500 note given to Burger, and at the time the property was offered for sale under the mortgage, on the first of the notes, sold to Ludington and then held by Mrs. Flower, Elwood tendered

448          FLOWER *et al. v.* ELWOOD *et al.*          [Sept. T.

Opinion of the Court.

to Gougar the amount of principal and interest then due, but it was refused. He also tendered the amount to Kinney after the sale and before the deed was executed to Mrs. Flower. This was a sufficient tender to prevent the sale. It was made by a person holding one of the notes secured by the mortgage, who, as an incumbrancer, had a right to pay the note and add it to his claim ; and it would not matter whether the note for which the property was sold, was a prior, equal, or subsequent lien. In either event, he had the right to pay the note and prevent the sale. Holding one of the notes secured by the mortgage, gave him such an interest as authorized him to make the tender and prevent the sale. When the tender was made, there was no objection interposed that a fee to Gougar was not tendered. If entitled to anything for going to the place fixed for the sale, he made no such claim, and Elwood had no other means of knowing whether Gougar claimed anything, and the amount was not fixed by the mortgage; and not having been claimed or the tender objected to on that ground, and inasmuch as Mrs. Flower held the note for which the sale was made, the tender was sufficient to prevent her, by the conveyance to her by Kinney, from taking any other or different interest in the property than she previously held under the note, even if the sale was legal. She expressly says the note was purchased for her, and we must suppose she knew the arrangement by which Kinney came in possession of the note, and that it was for her. This, Kinney fails to disclose in his evidence. She, however, says the purchase of the note was for her, and ignores what appears to have only been done by Kinney to give color to the transaction by his claiming ownership of the note and the payment of the money to him after the sale. He was, and had been, her attorney, and, from the evidence, we infer that the whole thing was simply arranged to give the transaction the appearance of a sale for Kinney's benefit. But even if she was not the owner of the note, she, through her agent, had notice of

the tender.   Her husband, as she testifies, was her agent in purchasing the property.   He was present and saw the tender was made to Gougar, and the tender was then made to him under the claim that he held the note, which he did not deny, but declined to receive the money.   This was sufficient to charge her, through her agent, with notice of the tender, and having such notice, she can not be protected as a *bona fide* purchaser.

Again, the power in the mortgage only authorizes Mrs. Adams, her representatives or attorney, to make the sale, and there can be no pretense that Gougar was her attorney.   But if the assignee succeeded to the right and became vested with the power, which is not conceded, as the power does not extend to assignees, still it would have to be exercised by the assignee, her representatives, or attorney, whilst in this case the sale was made, not by her attorney, but by his agent, neither the assignee nor her attorney being present at the sale.

When a power of sale is conferred by a deed of trust or mortgage, it must be strictly pursued, the presumption being that the delegation of power is induced by trust and confidence in the trustee authorized to make the sale.   Such power, unless authorized by the instrument itself, can not be delegated to another.   See *Thornton* v. *Boyden*, 31 Ill. 200; *Spear* v. *Hadduck*, ib. 439; *Hamilton* v. *Lubukee*, 51 Ill. 415; *Taylor* v. *Hopkins*, 40 Ill. 442; and other cases might be cited from our own reports announcing the same rule.

It can not be said that Gougar was the mere auctioneer, as Kinney, the attorney, was not present directing and controling the sale for the best interests of the parties, but he says he had delegated discretionary power to Gougar, as his agent.

The sale was, therefore, void, because the mortgage fails to confer power of sale on the assignee, or others acting under him, and, secondly, even if it had given such power, the sale was made by an agent of the assignee of the note, which the law does not authorize.   So, in any view we are enabled to

29—66TH ILL.

take of the case, we are unable to see that Mrs. Flower acquired any title beyond the equity of redemption she purchased of Gore, and the first and superior lien under the mortgage to Mrs. Adams by the purchase of the first note in the series. It was a first·and superior lien on the mortgaged premises, and when she purchased it she became entitled to have it satisfied out of the proceeds of the sale before Mrs. Adams or Burger could participate in the fund arising from the sale of the premises. This was the right acquired by Ludington & Co. when they purchased the note, and Mrs. Flower succeeded to the same rights when she purchased it, as she did not acquire it with the intention of satisfying it, but to hold it as a lien on the property. The decree excludes her of this right, and to that extent it is erroneous, and must be reversed and the cause remanded.

*Decree reversed.*