## N. K. FAIRBANKS, EXECUTOR,

### v.

## THE MERCHANTS NATIONAL BANK OF CHICAGO.

*Pledge of Stock as Security—Dividend—Rights of Pledgee—Renewal of Notes—Payment—Acquiescence.*

1. There can be no acquiescence without notice, either actual or constructive.

2. A pledgee is entitled to collect dividends on stock held by him. Where such dividends are collected by the pledgor, he holds them as trustee for the pledgee, to whom he must account. This rule applies to an issue of new stock in the nature of a stock dividend.

3. The mere change of the form of an indebtedness, collaterally secured, does not release the security, unless such is the intention of the parties.

Fairbanks v. Merchants Nat. Bank of Chicago.

4.    Upon a bill filed by the pledgee of stock of a corporation to secure the benefit of certain dividends, including certain new stock, it is *held:* That the stock was not the property of the wife of the pledgor; that the renewal of the loan from time to time did not release the security; and that the pledgee did not acquiesce in the collection of the dividends by the wife of the pledgor.

[Opinion filed January 16, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. LORIN C. COLLINS, Judge, presiding.

Messrs. GREGORY, BOOTH & HARLAN, for appellant.

Where the property of one person is pledged for the debt of another, such property will stand in the position of a surety for the debtor; and any change in the contract or suretyship which would discharge a surety, will release and discharge the property so held as collateral.    Price v. Reed, 15 N. E. Rep. (Ill.) 754.

This case makes it very difficult to sustain the decree of the court below, assuming, as can be demonstrated, that the bank is chargeable with notice of Mrs. Peck's ownership of this stock.

Nothing can be plainer than that, if she had signed a note as surety for her husband which had been canceled and surrendered to him upon the giving of a new note, without her signature, or had at the time of payment of such original note been extended, upon consideration, without her consent, her liability would be ended.    Nor if her husband expressly assented to such extension for her, would such assent bind her, without proof of his authority to act for her in this matter.

The authority of a husband to act for his wife is to be determined from the evidence, like the authority of any other agent, and persons dealing with him must take notice of its limitations.    Walker v. Coleman, 81 Ill. 390; Bernstein v. Bernstein, 11 Ill. App. 238.

Taking the law, then, as laid down by the Supreme Court, the bank had, by repeated extensions, lost all lien on the stock in question long before May 14, 1883, when the last note of

Peck was given.    If he then repledged it, there must be some evidence of his authority to do so.    Of this there is no proof, nor, indeed, was there any attempt at a repledge further than the execution of a new note.    In this, as in other respects, the case is quite analogous to Price v. Reed, *supra*.

Nor is this in anywise a question of intention, so far as the bank or its officers are concerned.    When a creditor extends time of payment of an indebtedness on which a surety is liable, he never intends to discharge his liability; nor is any inquiry as to his intention in this regard supposed to be in the least material or relevant.

The liability of a surety is said to be *strictissimi juris*, or at least of strict law.    It has certain well defined limitations, and terminates absolutely upon certain contingencies, without any reference to the intention of the parties or what may seem to be equities existing between them.

Nor is it necessary to show that injury has resulted to a surety claiming exoneration under the law through that which by law terminates his liability.    It is sufficient to say that this is the law.    This is elemental, and requires no authority for its support, but cases can be readily cited which so hold. Cooper v. People, 85 Ill. 417; Phillips v. Singer Mfg. Co., 88 Ill. 305; Burgett v. Paxton, 15 Ill. App. 379, and cases cited.

This being the law, its applicability to this case is apparent, if the bank is chargeable with knowledge of Mrs. Peck's ownership of the stock.    She held the legal title to these certificates.    Kellogg v. Stockwell, 75 Ill. 68.

The agreement was that the stock should be pledged to secure, not the payment of the old note, but the new; not any indefinite debt, but the particular sum, varying in almost every instance, for which the new note was given.    What was it that was pledged?    The stock as it stood at the time of the pledge; not all the dividends that had been earned and collected on it in the past.    It has been distinctly held by this court, in a case very similar in its essential facts to this case, that a note thus taken up is so far paid as to release securities pledged for its payment.    Fridley v. Bowen, 5 Ill. App. 198.

Fairbanks v. Merchants Nat. Bank of Chicago.

In this case there are many authorities cited which establish the general proposition that the giving of a new note and surrender of an older note to the maker raise a presumption that the latter is paid.   It seems quite doubtful whether this is a case of which a court of equity ought to take any cognizance.   An action for money had and received would reach any dividends to which appellee might be entitled, and as to the other feature of the bill, a suit to compel a transfer of stock will not ordinarily lie where such stock is commonly bought and sold in the market.   This objection may be taken after hearing.   Lacombe v. Forstall's Sons, 123 U. S. 562–70; Walker v. Kinzie, 18 Ill. App. 326; U. S. Ins. Co. v. Central Bank, 7 Ill. App. 426.

Messrs. Wilson & Moore, for appellee.

The holder of certificates of stock as collateral security, receiving the same indorsed with a power of attorney in blank, is entitled, upon notice to the company, to collect the dividends accruing upon such stock while such certificates remain in his possession; nor is transfer upon the books of the company material as to this right.

The title to such dividends is in the pledgee, the increase of such property going with the debt.   The pledgee, indeed, is the owner, and his special ownership imposes upon him the duty of a trustee; as such he is bound to collect the dividends, and may sue in his own name.   Where dividends are collected by a pledgor, an action for money had and received for his use may be brought by the pledgee, where the latter has received the certificates of stock so as to vest the legal title in him.   Colebrooke on Collateral Securities, Sec. 280, and authorities cited.

Dividends declared during the continuance of the pledge belong to the pledgee, even though the latter is not registered as the owner on the corporate books; the pledgee is entitled to the dividends on the stock, but must account for them when the pledge is redeemed.   Cook on Stock and Stockholders, Sec. 468, and authorities cited.

In the Merchants National Bank v. Richards, 6 Mo. App. 454, the Merchants National Bank was the pledgee of certifi-

cates of stock for a debt owing by Ray & Co., having received the same as pledgee on former loans. Richards was an attaching creditor who attached after notice to the company of the rights of the bank. On an interpleader it was claimed by Richards that the bank had no right to dividends, for the reason that the pledgee was not the owner, and the further reason that no transfer of the stock had been made on the company's books. It was there held that the pledgee was the owner and entitled to dividends declared while the stock was held in pledge. A decision in favor of the bank in the lower court was affirmed in this court. This case on appeal to the Supreme Court of Missouri was affirmed. See same case, 74 Mo. 77.

In Gaty v. Holliday, 8 Mo. App. 168, Gaty held certificates of stock as pledgee, and sold the stock for less than his debt; dividends accruing while he held it were paid by the company to the administrator of the pledgor who had distributed it as assets. Gaty sued the administrator for the same and recovered. On appeal it was held by the court that as pledgee he had a right, and it was his duty to collect dividends declared while he held the stock, and it made no difference that the stock was not transferred to him on the company's books. "The whole present interest belongs to the pledgee."

In Hill v. Newichawanich Co., 48 How. Practice Rep., 427, where stock was held by the pledgee to secure a loan, the certificates in blank having been delivered to the lender, it was held that the pledgee is the legal owner of the stock and entitled to the dividends declared while he holds the same, although no transfer is made on the company's books.

In Herrmann v. Maxwell, 47 N. Y. Superior Court Rep. 349, two certificates of stock issued to A, by him indorsed in blank, were pledged by B, who held the certificates, to secure a loan of money from C, and C receives the certificates in the same form. No transfer is made on the books and B collects dividends. The court say, "It is elementary law that the increase of the thing pledged is pledged with it," and that B held the dividends collected as trustee for C, to whom they belonged.

Fairbanks v. Merchants Nat. Bank of Chicago.

In McNeill v. Tenth National Bank, 46 N. Y. 331, and Leitch v. Welles, 48 N. Y. 601, it was decided that the requirement in the company's by-laws that the stock be transferred on its books was for its own protection only, and in no way affects the rights of the pledgee to a recovery of dividends.

It follows from the foregoing, that as to the dividends declared and paid after the 100 shares of stock were in the hands of the bank as collateral, the right to such dividends belonged to the bank so far as necessary to pay their loans.

The same rule which applies to dividends applies also with equal force, and for precisely the same reasons, to the increased stock. Sarah T. Peck could have had no right whatever to the increased stock, either as a matter of law or under a resolution of the company, except as the owner and holder of the original shares. As a matter of fact she was not at that time or at either of those times the owner or holder of these 100 shares; nevertheless she got the certificates, and at least ninety-nine shares thereof are still in the hands of her executor standing on the books in her name.

In Eidman v. Bowman, 58 Ill. 444, where a bank had been organized with a capital of $100,000, with power to increase it to $500,000, the capital was increased to $20,000, which was subscribed for without the knowledge of the shareholders and without their having an opportunity to take their proper proportion. A bill was filed to restrain the issue of the certificates, and the court held that the right to the new stock when increased " vested in the original stockholders proportionately, and belonged to them precisely like the old shares, except that it was not paid for;" citing Gray v. Portland Bank, 3 Mass. 365.

In Atkins v. Albree, 12 Allen, 360, a testator had given a trustee shares of stock to pay the income to his widow, and at her death the shares to another. The company increased its capital and the trustee took a part of the new stock and the rest was permitted to be sold; the proceeds were claimed by the widow as part of the income and by the remainderman as capital. It was held by the court that " The right to subscribe

for the new stock is only an incident or attribute of the original shares and not income." The proceeds, therefore, were to be retained by the trustee as part of the capital, to accompany the original shares.

The question to be determined in the case last cited was somewhat different from the present, but the principle involved was precisely identical, and the rule adopted there with reference to the character of the new stock when issued is the rule which must be applied in this case. The same was adopted by our Supreme Court in Eidman v. Bowman, *supra*, viz.: that the right to take the new shares belongs to and pertains to the ownership of the original shares. The authorities above cited establish conclusively that the whole present title and ownership in the original 100 shares belonged to the Merchants National Bank; necessarily, therefore, the right to take the new shares also belonged to the bank.

No claim has ever been made in this case that any act of the bank amounted to a release or discharge of an existing security; it was simply argued that each renewal was a payment, by which the bank lost all claim upon the stock; that each new note was a new pledge, and the bank took the stock each time as it then was, with no right whatever in precedent dividends. It will be seen that the whole argument hangs on the theory that a renewal was absolute payment, not only of the preceding "note," but of the "debt."

The question is exactly the same as if the security were a mortgage or trust deed instead of personal property in pledge, and the cases have arisen chiefly with reference to this sort of security. The following decisions in Illinois conclusively settle the question in favor of the bank, as we contend: Flower v. Ellwood, 66 Ill. 446; Darst v. Bates, 51 Ill. 444; Rogers v. Trustees of Schools, 46 Ill. 448; Worcester National Bank v. Cheeny, 87 Ill. 614; Citizens National Bank v. Dayton, 116 Ill. 263.

GARNETT, P. J. By its bill in this case appellee sought to secure the benefit of certain dividends on one hundred shares of the capital stock of the Chicago City Railway Company,

(originally issued to Sarah T. Peck) and of another one hundred shares which she, by reason of the first one hundred shares standing in her name on the books of the company, was permitted to subscribe for.

The first one hundred shares were given by Sarah T. Peck to her husband, John T. Peck, and by her indorsed and delivered to him. He pledged it to appellee to secure his individual indebtedness and other indebtedness of the firm of Peck & Bausher, of which he was a member. After the pledge was made, no transfer on the books of the company having taken place, his wife continued to draw the dividends until June 19, 1883. While the stock was thus held in pledge the railway company twice increased the amount of its capital stock, and permitted the stockholders to subscribe for the new stock by paying only a fraction of its value. On these terms Mrs. Peck subscribed for additional shares of stock, of which her estate still holds ninety-nine shares which were issued by reason of her name appearing on the books of the company as the owner of the one hundred shares pledged to appellee.

The court below found the bank was entitled to the benefit of the dividends collected by Mrs. Peck, and to the ninety-nine shares of new stock, upon payment to the executor of the amount which she paid for the new stock.

Appellant makes several objections to the decree.

1. It is urged that the stock was Mrs. Peck's property, standing merely as a surety for the debts, and was released upon the renewal of the notes by the bank. This point would be sound if the stock really belonged to Mrs. Peck, and the bank had notice of her title (Price v. Reed, 15 N. E. Rep., 745) but her answer states that she gave the stock to her husband in consideration of certain real estate which he conveyed to her. That must be accepted as conclusive on the question of title.

2. The renewal of the loans from time to time, appellant contends, were, in law, payments, and the stock, without any right to previously accrued dividends, was left as security for each note as though it were a fresh transaction. To support this point appellant relies on Fridley v. Bowen, 5 Ill. App. 191. In that case, however, the lender made no renewals, but

at each maturity of the loans new loans were made, and the old notes were paid out of the proceeds of the new loans, the creditor treating each transaction as a new discount.    The court there said that each successive discount was a new loan, constituting a new indebtedness, wholly separate and distinct from the former.    But here the evidence shows that the original indebtedness was continued, although represented at successive dates by new notes.    A mere change in the form of the indebtedness or renewal of the note representing the same does not release the security, unless such was the intention of the parties: Rogers v. School Trustees, 46 Ill. 432; Citizens National Bank v. Dayton, 116 Ill. 257; Flower v. Ellwood, 66 Ill. 438.

3.    There was no satisfactory proof that the bank acquiesced in the collection of the dividends by Mrs. Peck, nor can it be plausibly claimed that she received the new stock by the tacit consent of appellee.    There can be no acquiescence without knowledge, either actual or constructive.    The bank had no notice that she was receiving the dividends, or in fact that there were any dividends, and so far as the new stock is concerned the bank had no notice of any intention to issue it until after it was issued.

"A pledgee is entitled to collect a cash dividend upon stock, and to hold it as he holds the stock itself.    If he omits to obtain a transfer upon the books of the corporation, the corporation is of course justified in paying the dividends to the pledgor; but he is a trustee of the pledgee therefor, and must account to him."    Jones on Pledges, Sec. 398.

That the same rule applies to the issue of new stock at less than its value, when the same is issued as a privilege to the then stockholders, is manifest.    One receiving stock under such circumstances, impliedly represents to the corporation that he is a stockholder.    If he has in fact parted with his title, no wrong is inflicted on him by a decree that he shall surrender the new stock to the person to whom the original stock has been assigned.

This disposes of all the points that we think require attention.    The record is free from error and the decree is affirmed.

    Decree affirmed.