<hr />

## Sherman C. Spitzer v. Annie Williams et al.

1. MORTGAGES—*For Purchase Money—Effect of.*—A mortgage given to secure the payment of the purchase money of real estate, executed by the purchaser simultaneously with the deed of the property excludes all claims of liens arising under the purchaser and mortgagor, and the

subsequent taking of a trust deed in substitution for the same debt in no wise changes or affects the rights of the parties.

**Foreclosure.**—Error to the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed and remanded with directions. Opinion filed November 1, 1901. Rehearing denied November 22, 1901.

**Statement.**—This is a writ of error taken to the Cook County Circuit Court in a foreclosure suit brought by plaintiff in error, Sherman C. Spitzer, and John Milton Oliver, trustee, as complainants below, against August Jernberg and a large number of defendants, including the defendants in error, Annie and Ella Williams, who claimed to own lots 9 and 10, in block 7, of Elsdon, and to hold said lots free from the lien of complainants' trust deed.

The defendants answered, complainants replied, and the cause was referred to a master. The master found against the defendants, who thereupon filed objections before the master, which were overruled. These objections were sent up by the master and filed by him with his report, but were not by any order made exceptions before the court. No other objections and no exception as such were filed by the defendants in error.

The court on a consideration of the report found "that the objections of the said defendants, Annie Williams and Ella Williams, filed herein to said master's report, are well taken, and ought to be and are hereby sustained;" overruled the master and found for the defendants, decreeing their title to be good in fee simple, free from the lien of complainants' trust deed, and enjoined complainants from any sale of said lots under said trust deed.

The question of the priority of liens and title, which was the only contest that arose in the suit, grew out of the following state of facts as found by the master: Edward Williams, husband of Annie Williams, and who had adopted Ella Williams as his daughter, in March, 1887, began living on lot 9, in block 7, in Elsdon, as the tenant of John G. Earle.

John G. Earle owned considerable property in Elsdon, which he had platted and subdivided. On May 7, 1889, he sold over 200 lots to August Jernberg, by written contract of that date, recorded May 9, 1889, in which contract the agreed consideration of $40,000 was all in deferred payments of $5,000 in one year, $5,000 in two years, $10,000 in three years, $10,000 in four years and $10,000 in five years; the contract providing that Jernberg might obtain a deed to any of the lots on payment to Earle of certain fixed amounts per lot, with interest, and in case of sale by Jernberg that purchasers might obtain deeds from Earle on payment to Earle of such fixed sums and interest. Thereafter Edward Williams, who since March, 1887, had been living on said lot 9 as Earle's tenant, bought from Jernberg said lot 9 and the adjoining lot 10 for $550, by contract of May 27, 1889, which contract was never recorded. The payments thereunder of $150 cash and $100 a year for four years, as evidenced by four notes dated May 27, 1889, appear to have been made as provided. Thereby Williams got the title and interest Jernberg held under the contract of May 7, 1899, which interest and title was subject to Earle's lien for the unpaid part of the purchase price. After his purchase, Williams continued in possession of the lots and made improvements thereon of the value of about $200, consisting of a fence, well, sheds, porch, etc. It appears that Williams did not examine the records to find the Earle-Jernberg contract, recorded May 9, 1889.

This situation continued without change until May 7, 1890. Then the form of the papers was changed; the contract taken up, the title placed in Jernberg, and at the same time a trust deed given back to Earle for the amount still unpaid under the contract. The trust deed notes, in amounts, dates of maturity, interest, etc., were identical with the unpaid notes under the contract; and the trust deed itself contained releasing provisions as to any lots sold and paid for like those in the contract.

At the time of the execution of this deed and trust deed, Edward Williams had paid to Jernberg on account of his

purchase $250, and Jernberg had his note for the remaining $300 of the purchase price; this remainder was afterward paid to Jernberg. Earle did not receive any portion of such $550.

Jernberg received from Williams full payment for said lots 9 and 10, but neither Earle nor Oliver nor the holders of the trust deed notes received anything whatever from Williams or Jernberg on account of said lots. All payments made by Jernberg, except those on account of interest, were on account of certain particular lots, not lots 9 and 10, for which deeds or releases were thereupon executed and delivered.

June 3, 1893, the last payment on account of the purchase of said lots 9 and 10 was made by Annie Williams and Ella Williams; thereupon Jernberg made a deed of lot 9 to Annie Williams and a deed of lot 10 to Ella Williams. The deeds bear date of May 27, 1889; were acknowledged June 5, 1893.

The master found:

"That complainant, Sherman C. Spitzer, at the time he purchased the said notes made by Jernberg had examined the indices of the Cook County records and found the deeds to Ella and Annie Williams, recorded in August, 1893, but that said Spitzer had no actual notice, and no other notice than that with which he is chargeable from his examination of said tract indices.

OLIVER & MECARTNEY, attorneys for plaintiff in error.

JOHN C. TRAINOR, attorney for defendants in error.

MR. JUSTICE WATERMAN delivered the opinion of the court.

Upon the making of the contract of sale between Earle and Jernberg, the property thereby agreed to be sold became in equity the property of Jernberg, with power to dispose of or incumber it as he might have done with land to which he held the legal title, subject to the rights of Earle, the vendor, under the contract. And so, too, upon the execution of the contract between Jernberg and Edward Williams, the property included therein, namely lots 9

and 10 of block 7, became equitably the property of Williams, subject to the rights of Jernberg, under that contract, and also to the rights of Earle, under his contract with Jernberg. Williams being in the open, notorious possession of the property so purchased by him from Jernberg, Earle was chargeable with notice of the rights which Williams acquired by virtue of his contract with Jernberg. Jernberg and Earle could not thereafter, by any contract between them made, vary or affect the rights which Williams had acquired by his contract, but Williams' rights were subject to the rights which Earle had under his contract with Jernberg. Williams not only knew, by reason of his having been, prior to the making of his contract with Jernberg, a tenant occupying lot 9, as the tenant of Earle, but was chargeable with notice of the fact that the record title of said lots was in Earle and that he was the owner thereof. Such being the case, Earle and Jernberg entered into an arrangement and executed new paper, by which the form, and the form only, of the agreement between them was changed. The deed made by Earle to Jernberg, and the trust deed executed by Jernberg to secure the unpaid purchase money of said premises, in no way or wise changed or affected the rights or obligations of Williams. Nor did such papers, upon their face, pretend to deprive Jernberg of any right which he possessed or add in the least to the burden resting upon him or the obligations which he had to discharge in order to obtain a complete and absolute title to the property, lots 9 and 10, which he had purchased from Jernberg. Such being the case, neither Williams nor those who claim under him can be heard in a court of equity to insist that by the mere change in the form of the security held by Earle, in respect to his contract of sale to Jernberg, was he (Williams) or the land purchased by him, discharged from obligations resting upon him or it under the purchase by Jernberg from Earle of lots 9 and 10.

The mortgage given by Jernberg to Earle, executed at the same time as the deed by Earle to Jernberg, was a

transaction which did not for an instant vest in Jernberg any title to the premises divested of the lien which Earle had upon the premises for the payment of the purchase money contracted to be paid by Jernberg under the original agreement made between them.  A purchase-money mortgage executed simultaneously with the deed of the property excludes any claim of lien arising under the mortgagor and no statement is necessary in order to effect this. In this case, the seizure of Jernberg being a merely transitory one, no lien or claim acquired under Jernberg could or can intervene as against the rights of Earle under the mortgage given to him, said mortgage being but a mere change of the form of security which Earle held under the original contract made between him and Jernberg.  Not even a right of dower or homestead rights, most jealously guarded by the courts, can intervene in such a case, to take precedence over the rights of a mortgagee by virtue of his contract and mortgage.  Curtis v. Root, 20 Ill. 54–58; Flower v. Ellwood, 66 Ill. 438, 446; Shaver v. Williams, 87 Ill. 469–471; Roberts v. McNeal, 80 Ill. App. 536; Campbell v. Trotter, 100 Ill. 281–283; Roberts v. Doan, 180 Ill. 187; Bolles v. Carli, 12 Minn. 113; Morris v. Pate, 31 Mo. 315–317; Jones on Mtgs., 5th Ed., Vol. 1, Secs. 466 and 470–473; Am. & Eng. Ency. of Law, Vol. 19, page 583.

In the present case, Williams had paid to Jernberg at the time of the execution of the deed and mortgage but $250; the remaining $300 was paid by Williams to Jernberg after the execution of the deed and mortgage heretofore mentioned.  In this case, appellees are claiming that although they had full notice of the rights of Earle in and to the premises under consideration, and knew that they could not acquire title to said premises, except upon performance of the obligation of Jernberg to Earle, under the contract originally made, that the premises they purchased are entirely released from the lien which Earle had thereon, by a mere change in the form of the security which Earle had, notwithstanding such change of form in no way or wise affected the right of appellants or Edward Williams,

152    APPELLATE COURTS OF ILLINOIS.

VOL. 98.] Northern Assurance Co. v. Chicago Mut. B. & L. Ass'n.

under whom they claim, and this claim is made in a court of equity.

It is sufficient to say that the claim of appellees, in this regard, has no foundation. Coming to this conclusion, we have not thought it necessary to comment upon the fact that no exceptions were filed to the master's report finding the equities of the case with the complainants in the bill, and that the premises in dispute, lots 9 and 10, should be sold to satisfy the lien of Earle thereon.

The decree of the Circuit Court is reversed and the cause remanded with directions to enter a decree that the said premises, lots 9 and 10, in block 7, be sold to satisfy the deficiency decree entered by the Circuit Court in said cause on the 12th day of January, A. D. 1900. Reversed and remanded with directions.