THOMAS W. KEELIN, Plaintiff in Error, *vs.* THE POSTLE-WAIT COMPANY, Defendant in Error.

*Opinion filed June 18, 1913.*

1. CHATTEL MORTGAGES—*a change in indebtedness does not destroy the lien of mortgage.* Where a portion of a note secured by chattel mortgage is paid and a new note executed for the amount remaining unpaid the lien of the mortgage is not thereby destroyed unless such was the intention of the parties, since, as between the parties, the lien can only be destroyed by the payment or discharge of the debt or by the release of the mortgage.

2. SAME—*mortgagee not obliged to declare forfeiture upon default in payment of installment.* Where a note secured by chattel mortgage provides for the payment of a fixed sum per month for a specified period, the mortgagee is not obliged to declare a forfeiture and take possession upon default in the payment of installments, but may wait until the entire debt secured by the mortgage falls due.

3. SAME—*what right is secured by the second mortgagee.* One who takes a chattel mortgage which by its terms is subject to a prior mortgage on the same property does not acquire any vested right to have the contract between the mortgagor and the first mortgagee remain unchanged, but only the right to pay the debt secured by the first mortgage and thus release it.

4. SAME—*right of mortgagor to vary terms of contract with first mortgagee.* Where a note secured by chattel mortgage provides that payments of a specified amount each month shall be made upon the note by livery bills due from the mortgagee to the mortgagor, the mortgagor, by the act of giving a second mortgage on the same property, is not precluded from varying his contract with the first mortgagee by an agreement that the latter shall pay the livery bills to the mortgagor in cash each month and postpone the payments on the note until its maturity.

5. SAME—*what does not estop the first mortgagee from denying payments.* The fact that a creditor, before taking a second mortgage to secure his indebtedness, inquired of the first mortgagee if

the debtor was keeping up his payments and was informed that he was, does not estop the first mortgagee from denying the fact of such payments as against the second mortgagee, where it does not appear that the latter extended any further credit or changed his course of conduct on account of such representations.

6. SAME—*what may be considered in determining amount due under first mortgage.* Where the note secured by a first mortgage on livery property provides for monthly settlements by livery bills due from the mortgagee, the latter, as against the second mortgagee, is entitled, when computing the amount due it from the mortgagor, to deduct from the livery bills due the mortgagor such commissions as it is shown the mortgagor agreed to allow and pay, even though the note contains no reference to commissions.

WRIT OF ERROR to the Branch "C" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

WILLIAM A. DOYLE, (JOSEPH J. THOMPSON, of counsel,) for plaintiff in error.

JONES, KERNER & POSVIC, (DEWITT C. JONES, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

In this case the judgment of the Appellate Court for the First District reversing the decree of the circuit court of Cook county and remanding the cause, with directions to dismiss the bill for want of equity, has been brought up for review by writ of *certiorari*.

On May 1, 1903, Luke Wheeler purchased from defendant in error, the Postlewait Company, its livery business for $9400. Of this sum $1500 was paid in cash and three notes were given for the balance,—one for $500, payable in thirty days, one for $2000, payable in ninety days, and one for $5400, payable in twenty-three months at the rate of $250 per month, and interest. The first note was executed by Wheeler and plaintiff in error, Thomas W. Keelin. A chat-

tel mortgage was given on all the personal property used in the livery business to secure the other two notes. The note for $5400 was as follows:

*"Chicago, May, 1903.*

"On or before twenty-three months after date I promise to pay Postlewait Company $5400, with interest thereon from date at the rate of six per cent per annum. Value received. This note is secured by a chattel mortgage. Payment thereon is to be made in monthly installments of $250 each, the first payment to be June 20, 1903. It is agreed that said monthly payments are to be taken in livery hire by said Postlewait Company, which livery hire and service are to be satisfactory to said Postlewait Company. If the livery bill of said Postlewait Company at the end of any month shall exceed $250 the excess shall be paid to me. If the livery bill in any month shall be under $250 the adjustment shall be delayed until the following month and until the livery bill amounts to the sum of $250 or more. It being the intention to pay said indebtedness in livery hire to said Postlewait Company, as aforesaid, within the period above specified, at the rate of $250 per month. The interest to be computed and paid at each monthly settlement. This note is secured by chattel mortgage.          LUKE WHEELER."

In addition to the chattel mortgage security the $2000 note was also executed by Wheeler's father-in-law. Upon its maturity $1500 was paid thereon, and for the balance a note for $500 was given by the same parties.

During the time the livery business was owned by Wheeler he rendered livery service to the Postlewait Company, a corporation engaged in the undertaking business. For nine months, or until February, 1904, $250 per month was credited from the livery bill of the Postlewait Company upon the $5400 note. Subsequently, and beginning with the month of February, 1904, the whole of the livery bill accruing monthly was paid in cash. The Postlewait Company owned hearses and an ambulance, which were used in its business. By agreement entered into with Wheeler at the time he purchased the livery business he was to have the use of the hearses and the ambulance and divide the gross earnings derived from their use with the Postlewait Company,—sixty-five per cent to Wheeler and thirty-five per cent to the Postlewait Company,—the latter to main-

tain and keep the same in repair. In addition, it was further agreed that the Postlewait Company should have ten per cent of the proceeds from such livery business as it should bring or send to Wheeler, the bills for the same to be guaranteed by it. In the monthly settlements made by the Postlewait Company with Wheeler the thirty-five per cent of the gross earnings from the use of the hearses and the ambulance and the ten per cent of the proceeds from all the livery business furnished through it were deducted from its livery bill.

The $500 note was paid when due. No other payments were made upon the two remaining notes than those specified. At the time the decree was entered, assuming that the Postlewait Company had given Wheeler credit for all moneys that should have been applied to the payment of these two notes, there was then due and unpaid on the two notes the sum of $4059.75. Wheeler had been compelled to borrow money with which to pay the $500 note, and Keelin became security on this new note. In the meantime Keelin, who is engaged in the feed business, had furnished Wheeler with feed to the amount of $657.54. On July 16, 1907, Wheeler gave Keelin a mortgage on the same property as that mortgaged to the Postlewait Company, to secure the payment of a note for $2000, such mortgage being by its terms made subject to the mortgage of the Postlewait Company. The $2000 obligation mentioned in the mortgage was meant to cover the indebtedness then owing from Wheeler and such advances as might thereafter be made to him by Keelin. In August, 1904, Wheeler became convinced that he could no longer carry on the business, and he surrendered possession of the mortgaged property to the Postlewait Company, to be sold under the power given in the mortgage. The Postlewait Company advertised the property to be sold on August 27, 1904. On August 26, 1904, Keelin filed his bill in chancery in the circuit court of Cook county setting up the giving of the mortgage to

him, alleging that the mortgage to the Postlewait Company was fully paid and that there was nothing due it for which the property should be sold, and that the Postlewait Company and Wheeler were conspiring to defraud him of his rights. The bill prayed for a discovery of the property of Wheeler; that the Postlewait Company be required to disclose the amount of money received from Wheeler and all moneys coming into its hands from the livery business carried on by him; that its mortgage be declared satisfied; that Wheeler be decreed to pay plaintiff in error the amount due him, and asked for the appointment of a receiver. On the day the bill was filed Samuel C. Postlewait was appointed receiver, and on the following day the property was sold for the sum of $4450.40. The expense of the receiver and the expense of the Postlewait Company in connection with taking the property and advertising the sale, as allowed by the circuit court, amounted to $1042.74. Deducting this sum from the amount of the sale would leave in the hands of the receiver $3407.66, or $652.09 less than the amount remaining due and unpaid on the two notes due the Postlewait Company.

The Postlewait Company answered the bill but Wheeler was defaulted. The cause was referred to a master in chancery, who took the proof and reported, finding that the Postlewait Company had overcharged Wheeler $180 on its rent contract and that it was not entitled to the ten per cent of the proceeds from the livery business furnished by it; that the Postlewait Company was entitled to the balance due on the two notes, and that there was still in the hands of the receiver the sum of $469.12 in excess of the amount due the Postlewait Company. The chancellor sustained exceptions to the master's report and entered a decree finding that Wheeler was indebted to Keelin on the note secured by the second mortgage in the sum of $1585.21, and that Keelin had a superior and preferred lien on the funds in the hands of the receiver, as against the claim of the Postle-

wait Company, for that amount, and ordered the receiver to first pay the amount so found to be due Keelin and to turn the remainder over to the Postlewait Company. Upon appeal to the Appellate Court for the First District that decree was reversed and the cause remanded, with directions to dismiss the bill for want of equity.

It is first contended that when $1500 was paid on the $2000 note and that note was surrendered and canceled and the new note for $500, with personal security, was executed, the mortgage lien was released as to the unpaid balance of the $2000, and the $500 should not be accounted as a part of the debt secured by the mortgage to the Postlewait Company. A mere change in the form of the indebtedness does not satisfy a mortgage given to secure it unless it is so intended to operate by the parties. As between the parties the lien can only be destroyed by the payment or discharge of the debt or by the release of the mortgage. (*Flower* v. *Elwood*, 66 Ill. 438; *Fairbank* v. *Merchants' Nat. Bank*, 132 id. 120; *Salem Nat. Bank* v. *White*, 159 id. 136.) There is nothing here tending to show that the parties intended to release the lien as to the $500, but, on the contrary, it clearly appears that the new note was given as an evidence of the continuation of the debt.

Plaintiff in error argues at great length that under the terms of the $5400 note the Postlewait Company was bound each month, as against plaintiff in error, to apply $250 of the amount it owed Wheeler for livery hire upon the $5400 note, and if there should be any excess above that sum due on livery hire, to apply the same upon the $500 note until it should become extinguished. The special provision in the $5400 note was made for the benefit of Wheeler. He had the right to insist upon the Postlewait Company performing its part of that agreement, but he also had the undoubted right to vary the terms of that agreement, if he should see fit, by further agreement with the Postlewait Company, so that instead of applying any part of the liv-

ery hire due from the Postlewait Company from month to month upon his note, it might all be paid to him in cash and the payments on the note postponed until the date of its maturity. This livery hire due from the Postlewait Company was part of the earnings of the business conducted by Wheeler, and was not, as plaintiff in error contends, proceeds of the mortgaged property. Keelin did not, by the simple act of taking a second mortgage to secure an indebtedness due him, acquire any vested rights in the contract between the Postlewait Company and Wheeler. The only right he acquired in reference to the first mortgage when he secured his second mortgage on the same property was the right to pay the debt secured by it and thus release it. That Keelin was not damaged by this arrangement is evidenced by the fact that all the money paid by the Postlewait Company to Wheeler for livery hire was used by him to defray the running expenses of the business, and he was thus enabled to remain in business longer than he could otherwise have done.

Evidently upon the theory that default was made by the failure to apply the amounts provided to be paid monthly by the terms of the note and that the whole amount then became due, plaintiff in error contends that the Postlewait Company did not take possession of the mortgaged property within a reasonable time. This note did not become due until April, 1905, and it was not incumbent upon the mortgagee to declare a forfeiture upon the default in one of the several payments unless it should see fit to do so, as it had the option to wait until the entire debt secured by the mortgage became due. *Cleaves* v. *Herbert,* 61 Ill. 126; *Wilson* v. *Rountree,* 72 id. 570.

Plaintiff in error further contends that the Postlewait Company is estopped, as against him, from now denying the payment of $250 per month from February until August, 1904, on this note. He testified before the master that at the time he took his second mortgage he inquired

of the Postlewait Company whether Wheeler was keeping up the payments on his notes and was informed that he was; that thereafter, at least once each month up until the time the Postlewait Company took possession of the property, he made similar inquiries, and was informed on each occasion that the payments provided for were being made promptly. It is denied on the part of the Postlewait Company that any such statements were made after February, 1904, although it is admitted that prior to that time Keelin had been informed that Wheeler was making his payments promptly, which was the fact. Whether or not these statements were, in fact, made to Keelin after February, 1904, is immaterial, as under the situation disclosed that would not operate as an estoppel against the Postlewait Company. It does not appear that the indebtedness of Wheeler to Keelin was increased after the giving of the second mortgage, in July, 1903, and it therefore follows that Keelin did not extend any credit to Wheeler on account of such representations and was not caused to change his attitude or his course of conduct in any respect on such account.

It is alleged that in its monthly settlements with Wheeler the Postlewait Company improperly withheld thirty-five per cent of the gross earnings of the hearses and the ambulance and ten per cent of the amount of the receipts from the business furnished by it. It is shown by a clear preponderance of the evidence that Wheeler agreed with the Postlewait Company to pay these sums, and they were properly deducted in the monthly settlements made between the Postlewait Company and Wheeler.

There is some controversy about whether the sum of $180 on rent was properly deducted from the amount due Wheeler by the Postlewait Company in its monthly settlements, and whether the Postlewait Company should be entitled to an allowance of $83.33 for rent unpaid for the fraction of the month of August, 1904, and $31.25 for telephone bills covering the same period. So far as the rights

of Keelin are concerned, it is immaterial whether or not these sums were properly deducted by the Postlewait Company. Should we hold that they were not properly deducted there would still be a balance due from Wheeler to the Postlewait Company, and inasmuch as it cannot affect the result we refrain from a discussion of that question.

As the net amount realized from the sale was not sufficient to pay the indebtedness due from Wheeler to the Postlewait Company, the judgment of the Appellate Court is correct and is accordingly affirmed.

*Judgment affirmed.*