## THE SALEM NATIONAL BANK

### v.

## SUSAN WHITE et al.

*Filed at Mt. Vernon November 22, 1895.*

1. DESCENT—*rights of son born after the making of his father's will.* The son of a testator, born after will made, can claim his portion of the father's real estate, under section 10, chapter 39, of the Revised Statutes, as against a mortgage made after the father's death by his mother, who had acquired all the other interests and was a tenant in common with him, although probate of the will and settlement of the estate were previously had without allowing such son a portion.

2. ESTOPPEL—*what will not estop an after-born son from claiming his portion.* A son born after his father's will was made, who has not said or done anything to induce mortgagees of the real estate left by his father to change their previous position, is not estopped to claim his portion of such estate, even though such mortgagees had, in fact, no notice of his interest at the time of taking the mortgage from his mother.

3. POWERS—*when attorney in fact is not taken to have exercised power to mortgage.* A tenant in common of real estate having a power of attorney from his co-tenant to mortgage the property, will not be taken to have done so where the mortgage made shows no intent to convey the principal's interest, and does not purport, upon its face, to be made for such principal or in his name.

4. SAME—*power to sell is not power to mortgage.* An ordinary power of attorney to sell land embraces no implied authority to mortgage such land.

5. MORTGAGES—*change in form of security does not affect lien.* A mere change in the form of the evidence of the debt, not intended to operate as a payment, will not affect a mortgage lien.

6. SAME—*when mortgage by tenant in common will cover improvements.* A mortgage of real estate by one tenant in common will carry with it, on the principle of subrogation, the lien which the mortgagor had upon the share of his co-tenant for improvements made upon the common mortgaged property.

7. SAME—*does not carry unassigned right of dower.* A mortgage by a widow does not convey a dower right in the mortgaged premises, which had not been assigned when the mortgage was made, but rested in action only.

APPEAL from the Circuit Court of Marion county; the Hon. B. R. BURROUGHS, Judge, presiding.

The original bill in this case was filed by appellant against Susan White, Joseph I. White, and certain tenants occupying the premises hereinafter mentioned, to foreclose a mortgage, dated August 23, 1889, executed by said Susan White to appellant to secure two notes of same date, each for $4425.00, upon certain premises in Salem, Marion county, described as lot 1 in block 1, square 4, on the corner of Main and Broadway streets, fronting fifty feet on Main street and running back eighty feet; also a strip two feet wide on the north and six feet wide on the west of said lot; also lots 6, 7 and 8 in block 4, square 3. The only allegation in the bill as to Joseph I. White was, that he claimed some interest in said premises, as purchaser, etc., or otherwise, which was alleged to be subject to the lien of the mortgage.

Susan White and Joseph I. White filed an answer, setting up that Susan White was not the owner of the entire mortgaged premises when she executed the mortgage, but that Joseph I. White was and is the owner of an undivided one-fourth part thereof in the manner and for the reasons hereinafter stated; and that Susan White executed said notes and mortgage without the knowledge or consent of said Joseph I. White.

A cross-bill was filed by Susan White and Joseph I. White, setting up the latter's ownership of one-fourth of the premises free from the lien of the mortgage, and how said one-fourth interest was acquired; and praying for an account of rents and profits, etc., and for a partition of the premises, and that said mortgage should be decreed to bind only such portion thereof as should be set off to Susan White, and for a sale in case the premises could not be divided, and for general relief, etc.

The bank answered the cross-bill, denying that Joseph I. White was the owner of the one-fourth interest claimed by him, and alleging that he was estopped from claiming an adverse interest by reason of acquiescence, etc., and also alleging that the mortgage sought to be foreclosed

was the continuation of the lien of a former mortgage, given to secure money borrowed for the purpose of erecting a brick building upon the premises, and used in putting up such building.

The circuit court rendered a decree, upon the issue formed by the original bill and the answer thereto and replication, finding Susan White to be the owner of three-fourths of said premises, and Joseph I. White to be the owner of one-fourth thereof, and directing a foreclosure of the mortgage for the amount due thereon as against the interest of Susan White. Upon the issue formed upon the cross-bill the court rendered a decree, finding the allegations therein to be true, and ordering a partition as therein prayed, and appointing commissioners to make the same. The commissioners reported, that the premises could not be divided, and that their value was $10,000.00. Thereupon it was decreed, that the mortgaged property be sold, and that three-fourths of the proceeds be paid upon the mortgage, and the other fourth to Joseph I. White or his attorney. From this decree the present appeal is prosecuted.

The material facts, set up in the pleadings and established by the evidence, are as follows : The mortgaged premises, except the strip two feet wide above described, were originally owned by William White, the husband of Susan White and father of Joseph I. White. On June 8, 1860, William White executed his will, leaving all his property to his wife, the said Susan White, and his then three living children, William W. White, Cleopatra C. White and Lillie P. White. Afterwards, on March 12, 1862, the appellee, Joseph I. White, was born to William and Susan White, but the will was never altered or amended. Thereafter, on December 13, 1863, William White died testate, leaving his will as originally made, and leaving him surviving, his widow, the said Susan, and, as his only children and heirs-at-law, the said William, Cleopatra, Lillie and Joseph. Said will was filed

and admitted to probate in the county court of said county on March 8, 1864. The widow and one Nichols were appointed executors and the estate has been settled, but no portion thereof has been allowed to Joseph under the statute. The widow has not re-married.

It. is claimed by the appellee, Joseph I. White, that there was no intention expressed in said will to disinherit him, and that, under the statute, the legacies and bequests to his mother and brother and sisters should be abated in equal proportions to raise for him a portion of the estate, equal to that which he would have been entitled to had his father died intestate, and that, so, he is entitled to one undivided one-fourth part of said mortgaged premises. It appears that no part of the estate is left except the premises described in the mortgage.

By deed dated June 22, 1877, and recorded June 23, 1877, one Richard Atkin and wife conveyed to Susan White, and William, Cleopatra, Lillie and Joseph I. White the narrow strip above described and embraced in the mortgage, Joseph being at that time only fifteen years old.

By a trust deed, dated October 10, 1877, and recorded October 17, 1877, Susan White and William, Cleopatra and Lillie White conveyed the mortgaged premises described in the original bill in trust to one Goodnow, as trustee, to secure a loan of $5000.00, which was used by said Susan in building the brick building upon said land.

On June 2, 1884, the four children, William, Cleopatra, Lillie and Joseph executed a power of attorney, recorded April 9, 1885, to their mother, authorizing her to sell and convey certain real estate, including the premises which the original bill here was filed to foreclose.

On December 1, 1888, Cleopatra C. Davis, formerly Cleopatra C. White, and William W. White and Lillie P. White conveyed all their interest in said mortgaged premises to their mother, Susan White, who thereafter, on August 23, 1889, executed to the appellant, the Salem National Bank, the mortgage here sought to be foreclosed.

L. M. KAGY, for appellant.

HENRY C. GOODNOW, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Section 10 of chapter 39 of the Revised Statutes, being "An act in regard to the descent of property," provides as follows: "If, after making a last will and testament, a child shall be born to any testator and no provision be made in such will for such child, the will shall not on that account be revoked, but unless it shall appear by such will that it was the intention of the testator to disinherit such child, the devises and legacies by such will granted and given shall be abated in equal proportions to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of such testator if he had died intestate." (1 Starr & Cur. Stat. p. 883). William White, the testator, made his will on June 8, 1860, devising all of the real estate except a strip two feet wide, embraced in the mortgage to appellant, to his widow, Susan White, and his three children, William W. White, Cleopatra C. White and Lillie P. White. On March 12, 1862, another son, the appellee, Joseph I. White, not mentioned in the will, was born to the testator. The testator died on December 13, 1863, without changing or amending his will, and his will was duly probated. It does not appear by the will, that William White intended to disinherit Joseph I. White. It follows, that the devise of the mortgaged premises, except the said strip, should be abated to raise a portion for appellee, Joseph I. White, equal to that which he would have been entitled to receive out of the estate of William White, if the latter had died intestate. In other words, under the construction given to the foregoing statute by this court in *Ward* v. *Ward*, 120 Ill. 111, Joseph I. White is entitled to an undivided one-fourth part of

that portion of the premises embraced in the mortgage, of which his father died seized, and which was devised to his mother and his brother and sisters, subject to the dower therein of his mother, the widow, Susan White.

As Susan White obtained a conveyance from her three children, William, Cleopatra and Lillie, of their respective interests in the portion of the mortgaged premises devised to them, the mortgage executed by her to appellant covered an undivided three-fourths of such portion, but did not cover the undivided one-fourth owned by Joseph I. White. We are, therefore, of the opinion that the decree of the circuit court was correct in directing the mortgage to be enforced against the interest of Susan White alone, and not against the interest of Joseph I. White.

*First*—It is claimed by appellant, that Mrs. White and her son, Joseph, are estopped from claiming that the interest of Joseph is free from the lien of the mortgage. So far as Mrs. White is concerned, she is not claiming Joseph's interest for herself. Whatever acts or conduct on her part might estop her from claiming the one-fourth interest not embraced in the mortgage, it cannot be said that her son, Joseph, is in any way bound by her acts and conduct. The owner under the law of one-fourth interest, he never signed the mortgage, and, therefore, did not part with his interest or subject it to the lien of the mortgage. We find nothing in the evidence which establishes any estoppel or acquiescence against Joseph, or makes it inequitable in any way for him to assert his ownership in the property.

The officers of the appellant bank, and the holders of the mortgages of 1889 and 1877, lived in Salem where William White lived in his lifetime, and where his widow and children lived after his death. They knew Joseph I. White as a boy and after he became of age, and knew that he was a son of William White and Susan White. The record of the title to the mortgaged property, of

which the holders of the mortgages were bound to take notice, showed the will of William White, and that it mentioned only three of his children; and it showed also, that Joseph I. White never united with the other three children in the conveyance to his mother. We think that, under the testimony, the bank was not only affected with constructive notice of the outstanding interest in Joseph I. White when they accepted the mortgage, but that it had actual notice of such interest. We are aware, however, of no principle of law, by which a purchaser or mortgagee of the interests of all the tenants in common in a piece of land, except one, can appropriate the interest of that one, whether they did or did not have notice of such interest at the time of the purchase or mortgage.

If there is any species of estoppel which can be set up against Joseph I. White, it must be estoppel by conduct. "When a person, by his words or conduct, voluntarily causes another to believe in the existence of a certain state of things, and induces him to act upon that belief, so as to change his previous position, he will be estopped to aver against the latter a different state of things." (*People* v. *Brown,* 67 Ill. 435). To constitute estoppel by conduct, it must appear, that there was a representation concerning material facts, made with the knowledge of the facts, to a party ignorant of the truth of the matter, with the intention that it should be acted upon; and it must appear that it was acted upon. Fraud, or something tantamount thereto, is said to be a distinctive characteristic of this kind of estoppel. (*People* v. *Brown, supra; Flower* v. *Elwood,* 66 Ill. 438; *Powell* v. *Rogers,* 105 id. 318). Joseph I. White did not become of age until March, 1883. He was away from Salem at school five or six years. He left Salem altogether at the age of twenty-three years to go to California, where he has since resided. He neither said nor did anything, nor made any representations, which induced the holders of the mortgage of 1889, or the holders of the previous mortgage of 1877, to believe or act

in any such way as to change their previous position, or to justify them in claiming an estoppel as against him.

*Second*—It is said, that the mortgage executed by Susan White in 1889 covered the interest of Joseph I. White, because of the power of attorney executed by Joseph and his brother and sisters to his mother in June, 1884, authorizing her to sell and convey certain real estate, including that embraced in the mortgage.  The contention of appellant is, that Mrs. White had authority to mortgage, because the power of attorney gave her authority to sell and convey.  The mortgage was executed by her alone in her own name, and not as attorney or agent of her son, Joseph.  She does not describe herself as agent in the body of the instrument, nor sign it as agent or attorney. There is nothing upon the face of the mortgage to indi-cate, that the mortgagor intended to convey any other interest than that owned by herself.  The general rule is that, in order to bind the principal by a deed made by an agent, the deed must not be made by the agent in his own name, but must purport upon its face to be made, signed and sealed in the name of the principal.  (Story on Agency—9th ed.—sec. 148; Mechem on Agency, secs. 419, 420).

But, aside from the general rule thus stated, we do not think that, under the circumstances of this case, the power of attorney to sell and convey carried with it the power to mortgage.  It is true that, in some cases, a power to sell for the purpose of raising money, will imply a power to mortgage; and in cases of wills, where the power is conferred upon the executor to sell such parts of the land as he shall deem proper for the purpose of paying debts and making improvements, such power to sell has been held to include the power to mortgage. But, here, there was no evidence of any intention, on the part of those executing the power of attorney, that the power of sale was conferred for any of the purposes thus specified.  In case of an ordinary power of attorney to

sell land and make deeds of the land sold, the power to sell conveys no implied authority to mortgage. (Mechem on Agency, sec. 323; 1 Am. & Eng. Ency. of Law, p. 360; *Jeffery* v. *Hursh*, 58 Mich. 246; *Jeffrey* v. *Hursh*, 49 id. 31). In the case last cited, Mr. Justice COOLEY says: "The principal determines for himself what authority he will confer upon his agent, and there can be no implication, from his authorizing a sale of his lands, that he intends. that his agent may at discretion charge him with the responsibilities and duties of a mortgagor;" and cites many cases in support of this position.

Hence, we are of the opinion that the execution of the power of attorney to sell does not lead to the conclusion, that Mrs. White mortgaged the interest of her son, Joseph.

*Third*—It is claimed that the bank, as mortgagee, is. entitled to the increased value of Joseph's one-fourth interest caused by the improvements placed upon the property. In order to understand this contention, it will be necessary to refer briefly to some of the facts.

When Mrs. White and her three eldest children, William, Cleopatra and Lillie, made the trust deed to Goodnow in 1877, it was to secure $5000.00 borrowed nominally from one Martin, but really from appellant; and this. sum of $5000.00, together with $1000.00 subsequently borrowed from the bank or one of its customers, was used in improving the premises described in the mortgage by the erection of a brick building thereon. This improvement was for the benefit of the property, and seems to have been necessary. The premises were in the business. part of the town, and the buildings upon them had become old and dilapidated, so that they could not be rented to advantage. The old frame buildings were removed, and a new brick structure was erected. While there is. no positive testimony that Joseph I. White was consulted about the erection of the new building, or that he formally consented to it, yet he knew of it, and made no objection to it, and received a direct benefit from it in

the use by his mother of the rents derived from it for his support and education.    The new mortgage, made by Mrs. White in 1889 after she had received the deed of their interests from the three oldest children, was to secure, not a new indebtedness, but the old indebtedness of $6000.00 above mentioned, together with accumulated interest, taxes, insurance, etc.  The second mortgage was executed for the purpose of taking up the old notes, given to secure borrowed money used in improving the property.    The mortgage of 1889 was, therefore, a mere continuation of the mortgage of 1877, and represented loans of money that were expended in improvements upon the premises.    A mere change in the form of the evidence of the debt, not intended to operate as a payment, will not affect the mortgage lien.    (*Flower* v. *Elwood*, 66 Ill. 438; *Campbell* v. *Trotter*, 100 id. 281).

When the mortgage of 1889 was executed to secure an indebtedness representing money used in improving the property, Susan White and Joseph I. White were tenants in common, she owning three-fourths and he one-fourth. He was a tenant in common with the other children when the mortgage of 1877 was made.    If his interest in the land was made more valuable by reason of the improvements, and will sell for more at the partition sale on that account, it would seem to be just that he should make compensation.    The doctrine in equity is that, when improvements have been made by one tenant in common, the portion improved should, if practicable, be assigned to him in the partition of the estate; and when such a division cannot be made, he should be allowed a reasonable remuneration from those who receive the benefits of the improvement.    Where the premises are sold because they are not susceptible of division, the tenant in common making the improvement should be allowed the actual increase of the price received at the sale in consequence of the improvement made.    (*Louvalle* v. *Menard*, 1 Gilm. 39; *Howey* v. *Goings*, 13 Ill. 95; *Dean* v. *O'Meara*, 47 id. 120;

*Kurtz* v. *Hibner*, 55 id. 514; *Mahoney* v. *Mahoney*, 65 id. 406). In the case at bar, appellee, Joseph I. White, should be charged, as between him and his co-tenant, Susan White, with such increase in the amount, which his one-fourth interest in the land shall bring at the sale, as results from the fact of its being improved. (*Cooter* v. *Dearborn*, 115 Ill. 509). If Mrs. White is entitled to such increase, her lien therefor passes to appellant by virtue of the mortgage executed by her. Improvements placed on real estate by the mortgagor inure to the benefit of the mortgagee, and, so, if one tenant in common places improvements upon the common property, and thereby acquires a lien on his co-tenant's interest for a proportionate share of the increase in value caused by the improvement, it will be an accession to his interest which will be subject to a mortgage given by him on the property, and will pass to the mortgagee to the same extent, in the same manner and for the same reasons that the improvements became liable to the lien of the mortgage. (*Baird* v. *Jackson*, 98 Ill. 78). In other words, the mortgagee is entitled to be subrogated to the lien of the mortgagor improving the property as tenant in common, for such proportionate share of increase in value or price as inures to the benefit of the other tenant in common by reason of the improvements. (*Lagger* v. *Mutual Union Loan Ass.* 146 Ill. 283).

We are, therefore, of the opinion, that the decree of the court below is erroneous in not providing, that there should be paid to the appellant, out of the proceeds of the sale of the interest of Joseph I. White in the premises, such proportion of such proceeds, as shall represent the increase added to the amount of the sale of said interest by reason of the improvements.

*Fourth*—As we understand the evidence, the ownership of Mrs. White and her children in the strip two feet wide covered by the mortgage was not derived from the deceased testator, William White, but was conveyed to them

after his death by one Richard Atkin and wife. On June 22, 1877, Atkin executed a deed conveying the strip to Mrs. White and the four children. By this deed, Joseph I. White became the owner of only one undivided one-fifth part of the strip. The decree correctly finds him to be the owner of one undivided one-fourth part of all the mortgaged premises except the strip in question, but the decree is manifestly erroneous so far as it finds him to be the owner of one-fourth of the strip, instead of finding him to be the owner of one-fifth thereof. The decree should, therefore, be corrected in this respect, so as to conform to the proof.

*Fifth*—Mrs. White was entitled to dower in the one-fourth part of the mortgaged premises (except the strip) owned by her son, Joseph. (*Ward* v. *Ward, supra*). But her dower in this interest did not pass to the appellant as mortgagee by reason of the mortgage. The mortgage did not convey Joseph's interest. There is nothing to show that the dower therein was ever assigned. Dower may be released to the owner of the fee, but no other disposition can be made of it until it has been set apart. (*Best* v. *Jenks*, 123 Ill. 447). The right of dower in a widow is no estate in the land until it has been assigned, but it is a right resting in action only, and cannot be aliened. (*McNeer* v. *McNeer*, 142 Ill. 388). We do not agree with counsel for appellant in his contention that the bank is entitled to a lien on said dower interest, but regard the decree as correct in not awarding such lien.

By reason of the two errors in regard to the improvements and the extent of the outstanding interest in the strip described in the mortgage, the decree will be reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.     *Reversed and remanded.*