Howells State Bank v. Pont.

---

HOWELLS STATE BANK, APPELLEE, V. MARY ANN PONT ET AL., APPELLANTS.

FILED FEBRUARY 17, 1925.   No. 22984.

1. **Wills: DEVISE: CONSTRUCTION.** A charge upon land is distinguished from a devise of land in trust, in that in the former the land is devised genera'ly for the beneficial enjoyment of the devisee, subject to the payment by him of a specific sum of money on the performance of a particular duty, while in the latter the devise is limited to some particular purpose, with no beneficial interest in the devisee, at least before the expiration of the trust.

2. **Trusts: CREATION.** Precatory expressions are to be given their ordinary significance, and wil'l not be held to create a trust, unless it clearly appears from the terms and dispositions of the will and the circumstances, relevant to proper construction, that such expressions were used in an imperative sense, and that the creation of a trust was intended by the testator.

3. **Wills: DEVISE: CONSTRUCTION.** *Held*, in this case, that the will did not create a trust, but that title to the land therein devised vested in the devisees immediately upon the demise of the testator subject to a stated charge for the support of the latter's widow.

4. **Mortgages: VALIDITY.** The mortgagor having by the will a vested interest in the land in question, his mortgages to the bank were valid and were subject to foreclosure upon condition broken.

APPEAL from the district court for Colfax county: FREDERICK W. BUTTON, JUDGE. *Affirmed.*

*George A. Eberly,* for appellants.

*George W. Wertz, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD and EVANS, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

Samuel Pont died testate many years ago, leaving him surviving his widow, Mary Ann Pont, his two sons, Alfred and William, and his two daughters, Elizabeth Loughrey and Ann Sobota. His will, which was probated in 1898, contained the following provisions, to wit:

"Second, I give, devise and bequeath to my wife, Mary Ann Pont, all my household furniture, and the use of my dwelling house and lot being a part of out lot B in Howells, Nebraska, as it now stands in my name during her natural life, and I also give her for her support and use eight dollars ($8.00) from the income of my farm, the west half of the northeast quarter and the east half of the northwest quarter of section twenty, township twenty, and range four east of the 6th P. M. in Colfax county, Nebraska, to be paid to her monthly by my executor during the term of her natural life."

"Fifth. I give, devise and bequeath to my daughter, Ann Sobota, two hundred dollars as soon as same can be realized from the income of my estate by my executor, or out of the estate, after my wife's death.

"Sixth. I give, devise and bequeath to my son, William Pont, six hundred dollars to paid to him by my executor as soon as same can be realized from the income of my estate, or if same cannot be realized from the income, then same shall be paid to him, out of my estate after my wife's death.

"Seventh. All the rest and residue of my estate, real, personal or mixed of which I shall die seised or possessed,

or to which I shall be entitled at my decease, I give, devise and bequeath to be equally divided between and among my three children as follows.: Alfred Pont, Ann Sobota. and William Pont.

"It is further my intention that none of my land shall · be sold until after the death of my wife, Mary Ann Pont, but should it be necessary to sell any of it, to pay any of my debts, then I direct that only the east eighty acres,. being the west half of the northeast quarter of section twenty, twp. twenty, range four, east, be sold and no more."

The widow has received all that was provided for her in the will and is now deceased, her demise occurring subsequent to the filing of the briefs in this case, and counsel suggesting her death, upon argument of the cause. It is also probable that William Pont and Ann Sobota have received the legacies provided for them in the will, though that is perhaps immaterial. It appears from the record that William Pont has given mortgages from time to time upon his interest in the land left by the deceased, and in 1913 and 1914 Alfred Pont gave three mortgages on his interest in said land to the Howells State Bank. Petition to foreclose these mortgages was filed in the district court for Colfax county in January, 1921. Decree of foreclosure was entered in said cause on the 3d day of May, 1922, which decree contains a finding that said Mary Ann Pont was entitled to an annuity of $96 a year as a charge imposed upon the land by the will, and also that it was agreed by stipulation of the parties that she should have the entire rent and income from said land during the term of her natural life. And the decree directs a sale of the premises subject to her rights as so found and stipulated.

The case was vigorously contested in the trial court upon the theory that according to the terms of the will, and according to the provisions of an agency agreement made by Mary Ann Pont, William Pont, Ann Sobota and Alfred Pont on the 1st day of February, 1904, Alfred Pont had no vested right whatever in the land, and that the

mortgages made by him were invalid; that the will impounded the land as trust property, not to be divided and not to vest in Alfred and William Pont until after the death of Mary Ann Pont. This contention was set forth in lengthy answers filed by Mary Ann Pont, and by Edward E. Dickenson, as administrator of the estate of Alfred Pont, deceased; the demise of Alfred Pont having occurred subsequent to the making of said mortgages and before the beginning of said foreclosure suit. Replies were filed in which the Howells State Bank denies that it ever had any notice or knowledge of said agency or trust agreement. Said agency agreement recites, among other things, that the estate is solvent; that the heirs are all of legal age and sound of mind; that the heirs desire that the property be taken charge of, properly managed, and finally divided according to the will among the children; that Alfred Pont is therefore appointed to take charge of the estate and to so manage and distribute it, paying taxes and upkeep, paying Mary Ann Pont the sum of $96 a year, and such other sums not exceeding the net rentals and income from the estate, as may be necessary for her comfort and welfare, and applying the surplus, if any, to the legacies; that said agency agreement terminate with the life of Mary Ann Pont.

The contention urged in the district court is brought here upon appeal, appellants insisting that a trust was established both by the will and by the agency agreement described; that no title vested in Alfred Pont, and that he could make no mortgage to the bank. They contend that the district court was in error in entering a decree of foreclosure. They urge that such mortgages were at most only agreements by which the said Alfred Pont or his representatives could be required to execute a mortgage upon his undivided portion upon or after the death of Mary Ann Pont.

The appellee denies that it had any notice or knowledge of the agency agreement which was entered into. And we must so hold, because there is no evidence in the

record upon which a counter conclusion can properly be arrived at. The question then, as the court views it, is simply whether or not the will established a trust under which title to the land in question was to be held until after the death of the widow of the deceased, or whether the interest of the widow was a charge imposed upon the land, subject to which the title vested in said sons upon the death of their father.

There is an essential difference in the law of wills between a trust and a charge imposed upon property devised. In the one the title to the real estate vests in the trustee, while in the other it vests in the devisee. In the former the devisee has no title at all until the trust is terminated. In the latter his title is not suspended, though the enjoyment of the gift may be postponed by the power or charge to which the land is subject. "A 'charge' upon land by will is distinguished from a 'trust' of the land, in that in the case of the former the land is devised generally for the beneficial enjoyment of the devisee, subject, however, to the payment by him of a specific sum or specific sums of money, or the performance of a particular duty, while in the case of a 'trust' the devise is limited to some particular purpose, with no beneficial interest in the devisee." *Lang v. Everling*, 3 Misc. (N. Y.) 530.

The distinction is well pointed out in Alexander on Wills, an authority much quoted in the briefs of both appellant and appellee: "In order to create a trust by the use of precatory expressions, three things are essential: First, that by the use of such expressions the testator intended to impose an imperative duty upon the devisee and to create a trust." "To create trusts by the use of words of recommendation, desire, entreaty, or the like, it is necessary to give such words a different meaning from their common acceptance. For this reason the modern tendency is to limit the application of the doctrine of precatory trusts, and words of desire, recommendation, and the like, will be given their ordinary significance and will not be held to create a trust unless, from the terms and dispositions of

the will and the circumstances, relevant to proper construction, it clearly appears that said expressions were used in an imperative sense, and that the testator intended to create a trust." 2 Alexander, Wills, secs. 1090, 1091.

We search the will in vain for words clearly indicating that the testator intended to establish a trust. In the cases of *Clark v. Fleischmann,* 81 Neb. 445, and *Snyder v. Collier,* 85 Neb. 552, cited and relied upon by the appellant, the language of the will is pretty nearly express in establishing a trust. The will constantly speaks of "executor and trustee." Here no language akin to that is employed. On the contrary, after giving his wife his household furniture, a life estate in his dwelling house and $8 a month from the income of his farm, and after two specific bequests of money to his children, the testator says in the seventh article of his will: "All the rest and residue of my estate, real, personal or mixed of which I shall die seised or possessed, or to which I shall be entitled at my decease, I give, devise and bequeath to be equally divided among my three children as follows: Alfred Pont, Ann Sobota and William Pont." These words import a gift and a vesting of title, though the enjoyment of the same be postponed to the carrying out of the charge upon the estate.

It is true that the next article of the will recites that the testator intended that none of his land should be sold until after his wife's death, with the proviso that, should it be necessary to sell any of it to pay any of his debts, then only the east 80 acres should be sold. The testator did not provide in his will, as in the case of *Hiles v. Benton,* 111 Neb. 557, that his son should not alienate the interest devised to him. What he had in mind was to make his wife's support the first charge upon the land during her whole life so that neither she nor any one else, nor all together, could by any agreement or by any manner of conveyance so alienate the land that it would be relieved from the charge of her maintenance. But it does not appear that he intended to deprive his children from using their portions as they chose so long as they did not deprive

their mother of the certainty of support that a charge upon the land provided. And he meant to bind his wife so that she could not deprive herself of that security. The doctrine of the *Hiles* case does not apply in the case at bar. In that case it was the intention of the testator to give his son an estate with a limitation that should take the place and perform the function of a spendthrift trust.

It would also seem that the contention of the appellants that the administrator is estopped is entirely sound. Alfred Pont in his lifetime took the position in executing the mortgages in question that he had a vested interest in the land, and neither he nor his representatives can well take the opposite view in this proceeding. Nor does it seem that the representatives of Mary Ann Pont, now that she is dead and now that she has had every use of the land that could possibly accrue to her under any view of the meaning of the will, should be heard to complain in her behalf.

The intention of Samuel Pont, as we arrive at it upon a careful consideration of the language of his will and of the testimony, was to vest the title to his land in his children in undivided portions. This being the case, and the will so being construed, an interest in the fee was vested in Alfred Pont at the time that he made the mortgages foreclosed in this action.

It follows that the judgment of the district court is right, and the same is

AFFIRMED.