[File No. 6204.]

E. C. RUBLE, Appellant, v. GRAFTON NATIONAL BANK OF GRAFTON, N. D., a Corporation, Respondent.

(250 N. W. 784.)

130

Opinion filed October 25, 1933.

*Zuger & Tillotson,* for appellant.

*Ben Greenberg,* for respondent.

. BURR, J. April 29, 1882, the United States Government gave one Jamsgaard a patent to the land in question, the land being the homestead of Jamsgaard and wife. February, 1909, Jamsgaard deeded the

land to his wife and shortly thereafter died. Within a short period thereafter the wife died, leaving as sole heirs her two daughters, Minnie and Johanna Jamsgaard, who continued to live on the farm. Upon the probate of the mother's estate the land involved descended to these two daughters—at that time apparently over eighteen years of age—each having an undivided half interest, and the land was never divided between them. Some time thereafter Johanna moved to Minneapolis and ceased to make her home on the land.

April 26, 1918, the daughter Minnie was married to Halvor Landswerck and they have been husband and wife ever since.

April 26, 1928, Minnie gave a mortgage on her interest in the land to the Scandinavian-American Bank for $1200.00; on February 27, 1929, a mortgage on her interest for $900.00 to the Grafton National Bank; and on May 9, 1929 a mortgage for $2000.00 to her sister Johanna. The mortgages to the two banks being due, and Minnie being in need of additional money, on January 5, 1931, she gave another mortgage to the Grafton National Bank to pay the mortgages already given to the banks, to pay a judgment against her exceeding $400.00 and for the purpose of obtaining $200.00 in cash. This mortgage was recorded April 23, 1931. This is the mortgage involved in this action.

The bank required a release of the mortgage held by Johanna and upon the release being furnished the bank cancelled the mortgages referred to, settled the judgment and furnished the money as required. The mortgage to the Scandinavian-American Bank had been foreclosed by regular proceedings, a sheriff's certificate issued and assigned to respondent and thereafter a deed was issued to it.

The husband Halvor Landswerck did not join in the execution of any of these mortgages.

October 14, 1931, the two daughters Minnie and Johanna transferred the land to the plaintiff by quitclaim deed—both signing the same conveyance which was acknowledged by Minnie on October 16, 1931 and by Johanna on October 19, 1931. On August 28, 1931, the husband Halvor Landswerck signed a separate quitclaim deed transferring his interest to the plaintiff. Some question has been raised in regard to alterations of this deed after, or at the time of its execution;

but we need not determine this. Neither of these quitclaim deeds had been filed for record at the time of the commencement of this action.

The plaintiff then commenced this action to quiet title; but did not make either of the sisters, nor Minnie's husband parties to the action.

The complaint of the plaintiff is in the usual statutory form in which he claims to be the owner of the land and that the parties defendant claim interests therein which he alleges are void.

The only defendant to answer is the Grafton National Bank. It sets up the mortgage which it received to secure the amount which it advanced to pay off the Scandinavian-American Bank mortgage, its own mortgage, the judgment, and the money advanced to Minnie, and claims a lien on the land superior to the interest of the plaintiff.

Plaintiff replies, alleging the bank's mortgage is "void and of no force or effect, and the said defendant has no interest in said land or premises by virtue of any such alleged transaction." Nowhere does he set up that the land involved was claimed to be or was the homestead of Minnie Landswerck at the time the mortgage was given, or that the husband did not join in the mortgage.

"A defense of homestead must be specially pleaded;" (Johnson v. Bartron, 23 N. D. 629, 137 N. W. 1092, 44 L.R.A.(N.S.) 557) for "one who wishes to avail himself of a homestead right must allege facts to entitle him to it." Currie v. Look, 14 N. D. 482, 486, 106 N. W. 131. The burden of proof to show the homestead character of land is upon him who asserts it.

The plaintiff contends the mortgages given by Minnie were void as against her because she was a married woman at the time they were given, the land involved was her homestead and the mortgages were never signed by her husband; that the mortgage involved was void as against Johanna on the ground that Johanna received no consideration for the mortgage, that she was an owner of an undivided half interest in the land which could not be severed, and that the judgment paid by the bank never attached to the land.

The trial court found that the land was not the homestead of Minnie, that the mortgage of the defendant bank, dated January 5, 1931, was a valid mortgage, that the plaintiff was the owner in fee simple of the land subject to the mortgage of the bank, and that the quitclaim deed executed by the husband to plaintiff had been materially altered after

its execution. The trial court allowed the bank costs against the plaintiff in the sum of $37.05. Judgment was entered upon the findings in accordance therewith, and from the judgment entered the plaintiff appealed demanding a trial de novo.

Johanna Jamsgaard, joined with her sister in the execution of the bank mortgage involved. She was an unmarried woman living in Minneapolis at the time and there can be no question but what such mortgage is good on her undivided half interest.

Plaintiff's contention that there was no consideration to Johanna is without merit. The consideration for Johanna's execution of the note and mortgage, and for the release of her mortgage was the payment of the amount due from her sister to the Scandinavian-American bank, the amount due the Grafton National Bank, the amount paid on the judgment and whatever cash was advanced to Minnie. There is no question but what Minnie owed these debts, whether her mortgages were valid or not, and the debts were paid.

The contention that Johanna could not mortgage her undivided half interest is without merit.

Section 6730 of the Compiled Laws says "Any interest in property which is capable of being transferred may be mortgaged" and this principle has a wide application. See Bennett v. Harrison, 115 Minn. 342, 132 N. W. 309, 312, 37 L.R.A.(N.S.) 521; Tuttle v. Blow, 176 Mo. 158, 75 S. W. 617, 620, 98 Am. St. Rep. 488.

Section 5490 of the Compiled Laws says "Property of any kind may be transferred" except "a mere possibility, not coupled with an interest" (§ 5491) and "a right of re-entry or of repossession for breach of a condition subsequent cannot be transferred to any one except the owner of the property affected thereby" (§ 5492). "An undivided one-half interest in land is property," and may be made the subject of a mortgage. Clark v. Lyster (C. C. A. 8th) 155 F. 513; Cabrera v. American Colonial Bank, 214 U. S. 224, 234, 53 L. ed. 974, 978, 29 S. Ct. 623; Salem Nat. Bank v. White, 159 Ill. 136, 42 N. E. 312; Howells State Bank v. Pont, 113 Neb. 181, 202 N. W. 457, 460; 41 C. J. 374.

The plaintiff's claim that the land involved was the homestead of Landswerck and wife at the time the mortgages mentioned were executed is also without merit. The record shows that before Mrs. Lands-

werck was married she lived upon the land in question. It was the home of her parents and after their death she continued living there. Upon the death of her mother, however, this land ceased to be a homestead at all, after the daughters became of age. While the record is silent as to the age of either daughter it is clear they had attained their majority by the year 1918, or at least that Minnie did as she married that year, and she was transacting business and there is no claim either girl was a minor at that time. Upon the death of the parents the homestead character of the land ceased. Sections 5626 and 5627 of the Compiled Laws show that the homestead character of the land continues for the benefit of the minor children only. Bailly v. Farmers' State Bank, 35 S. D. 122, 150 N. W. 942, 944, shows that the homestead character ceases, after the death of the parents when the children attain majority. This is the plain intent of our statutes referred to.

Halvor Landswerck was residing in Minneapolis at the time of his marriage in April, 1918, and the newly married couple remained in Minneapolis for about two months. Then they went to the farm where they remained one or two months, and then left for the Dunseith territory where the husband "had a claim up there" as she says. They remained on this claim until Christmas time, and then in the early spring both of them went to live on a homestead in Canada on which the husband had filed, presumably under the Canadian homestead laws. Just when he took the homestead is not disclosed, but the wife testified he had a homestead in East (West?) Ontario prior to 1918. At the time they moved onto this claim he had not made final proof and they were living there so he could make proof. Some time that summer she came back to look after her farm, but stayed only a short time. In the following winter he came and stayed on the farm for a short time; then returned to the claim in Canada and as she said he spent most of his time in Canada. He had some buildings on the Canadian homestead and he remained there most of the time until 1924. During that time she went up there frequently to stay and about the year 1922 remained at least eleven months. The record does not show when he made final proof, but in the fall of 1924 he came back from Canada, stayed at the farm until 1925 and in May he left for his place at Dunseith. The wife did not go with him there and she says she has not seen him since. She says she knew her husband had a home in Dunseith.

This is the substance of testimony of the wife, there is nothing to contradict it. It is the contention of the plaintiff that this testimony shows the land in question to have been the homestead of Mrs. Landswerck during all of this time since 1918 when she married, which period included the time when the mortgages involved were given. It will be noted neither Landswerck nor his wife is making any claim for homestead. Neither is a party to the action, nor sets up any homestead claim—so far as this record is concerned—and there is no proof of any homestead declaration.

The husband is the head of the family and primarily it is his duty to select the home. Section 4408 of Comp. Laws. The testimony shows that he and his wife were living on a homestead in Canada for the purpose of obtaining land from the Canadian government under the homestead laws of Canada. Clearly this family could not have two homesteads at the same time. At the time of her marriage she had no homestead interest in this land involved. It had ceased. There is nothing in the record to show her the head of a family at any time. She was not married prior to 1918 and there is nothing to indicate there was any one dependent upon her. There is no claim that she was living on the land as a minor. Thus in 1918 this land was not her homestead. Since that time she had homestead rights in Canada. The parties are not divorced. There is no testimony that her husband deserted her or that she deserted him or there are any children. True they are living apart, but this may be by mutual arrangement. According to her own testimony he has a home near Dunseith. It is true the homestead of the family may be property which belongs to the wife, but there is nothing in the record to show the husband ever claimed the wife's land as his homestead. At all times he had a home elsewhere, as in Canada and then in Dunseith, and during all this time involved he had both properties. There is no proof nor claim that she was forced to leave him. In Swingle v. Swingle, 36 N. D. 611, 620, 162 N. W. 912, this court shows that where a woman owning land marries a man who has a homestead and then moves with her husband to her husband's land and establishes their homestead upon his land this constituted a complete abandonment of her former place of residence and of her homestead on her own land if she had one. Under the provisions of § 5608, Comp. Laws "the homestead of a married person cannot be

conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife;" but this does not apply if the land in question is not a homestead.

It is not necessary for the husband to claim land as his homestead in order to constitute it a homestead. If in fact this land involved was the domicile or home of the family then a claim of homestead could be made by the members of the family entitled to make the claim. Dieter v. Fraine, 20 N. D. 484, 490, 128 N. W. 684. But the land must be the homestead of the family. The case of Hazlett v. Mathieu, 57 N. D. 57, 220 N. W. 647, has no application here. While temporary absence from the home does not destroy the homestead character of the land, there is nothing in this record to show that a homestead ever was established upon the land in question. At the time of the mortgage husband and wife were living in Minneapolis, had a home in Dunseith, and a homestead claim in Canada under the homestead laws. To this Canadian land the family went and there is nothing in the record to show that the husband ever established a home on this land involved. The finding of the trial court that this land was not a homestead is amply sustained by the evidence. The judgment of the lower court is affirmed.

BIRDZELL, Ch. J., and NUESSLE, BURKE and CHRISTIANSON, JJ., concur.